422 So.2d 615 (1982)
Thomas G. McKENNA, Plaintiff-Appellant,
v.
Barbara STEEN, Defendant-Appellee.
No. 82-253.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1982.
Rehearing Denied December 28, 1982.
José R. Cortina, Baton Rouge, for plaintiff-appellant.
Theall & Fontana, Gary E. Theall, Abbeville, for defendant-appellee.
Before CULPEPPER, DOMENGEAUX and GUIDRY, JJ.
DOMENGEAUX, Judge.
A husband who voluntarily sold his dentistry practice to enroll in law school appeals from the rejection of his rule to reduce child support payments. We affirm.
*616 Initially, Barbara Steen McKenna filed suit against her husband, Dr. Thomas McKenna, for divorce. The parties had previously been separated and had partitioned the community property. As part of the community property settlement, Doctor McKenna received an apartment building and his dentistry office premises, and Mrs. McKenna received some rent houses purchased by the couple during their marriage. By judgment dated January 31, 1980, Doctor McKenna was ordered, after a full hearing, to pay $900.00 per month child support for the four children, and $800.00 per month alimony. On May 1, 1980, the separation case was tried on the merits. The parties entered into a stipulation, agreeing that the separation be granted on the basis of mutual fault, and that child support be increased from $900.00 per month to $1,200.00 per month until the divorce, at which time it would be increased to $1,600.00 per month. The agreement also provided that alimony would remain at $800.00 per month until the divorce, at which time it would decrease to zero. These stipulations were reduced to judgment. Thereafter, a divorce was granted, and in accordance with the previous judgment, the child support was fixed at $1,600.00 per month, and alimony was reduced to zero. No appeal was taken from that judgment. Shortly after the divorce was granted Doctor McKenna sold his dentistry practice and enrolled in Southern University School of Law, whereupon he filed this rule to reduce child support payments.
The only substantial issue raised on appeal is whether or not Doctor McKenna is entitled to a reduction of child support payments.
It is important to note that no appeal was taken from the consent judgment establishing that Doctor McKenna was to pay $1,600.00 per month child support, and that this is an appeal from the judgment rejecting his request for a reduction in the consented to award only.
In Howell v. Howell, 391 So.2d 1304 (La. App. 4th Cir.1980), that court discussed the status of our jurisprudence concerning modifications of consent judgments in alimony and child support cases as follows:
"The Louisiana jurisprudence establishes that a consent judgment of alimony is not subject to modification unless a change of circumstances supporting the modification is proved. Bernhardt v. Bernhardt, 283 So.2d 226, 229 (La.1973); Johnson v. Johnson, 357 So.2d 69 (4th Cir.1978). This rule applies to child support awards as well as alimony awards. Laird v. Laird, 363 So.2d 244 (4th Cir. 1978); Gennaro v. Gennaro, 306 So.2d 756 (4th Cir.1975). The change in circumstances must occur during the period of time between the date of the consent judgment and the date of the rule for modification of the award of child support and alimony. Bernhardt, supra. The party requesting a modification of a support award bears the burden of proving a change in the financial condition of one of the parties. Cole v. Cole, 338 So.2d 152 (2nd Cir.1976); Rachal v. Rachal, 250 So.2d 560 (1st Cir.1971). Finally, the jurisprudence clearly establishes the rule that an award of alimony and child support are within the sound discretion of the trial court and will not be disturbed on appeal in the absence of a clear showing of an abuse of discretion. Nicolle v. Nicolle, 308 So.2d 377 (4th Cir. 1975); Fakouri v. Perkins, 322 So.2d 401 (3rd Cir.1975).
Since the consent judgment Doctor McKenna has sold his practice as a dentist and has enrolled in law school. The change has resulted in a substantial decrease in his income, and for that reason, Doctor McKenna seeks a reduction in the amount of child support he is currently ordered to pay.
This Court in Mosley v. Mosley, 348 So.2d 225 (La.App. 3rd Cir.1977), writ denied 350 So.2d 1213 (La.1977), addressed the issue of voluntary dismissal of employment resulting in a change of financial conditions, and the effect of one's decision to terminate employment on alimony and child support. In that case Judge Guidry in speaking for this Court stated:

*617 "Although our search into the jurisprudence discloses no cases which are apposite to the peculiar facts of the instant matter we recognize that it is a well established rule that a husband may not avoid his alimony obligation by quitting work. Viser v. Viser, 179 So.2d 673 (La. App. 1st Cir.1965); Rakosky v. Rakosky, 275 So.2d 421 (La.App. 4th Cir.1973), writs refused June 11, 1973. In the Rakosky case a husband left a $12,000.00 a year job in anticipation of entering private law practice. Thereafter he filed a motion to suspend or reduce his wife's alimony pendente lite because of his loss of income. The court in rejecting his motion for a reduction of his alimony payments stated at page 422:
`We do not disagree that the husband's alimony obligation ought not prevent his attempting private practice, and that a decreased income from practice should be considered in reviewing the amount of his alimony obligation. But here the only evidence of substantial loss of income is that the husband quit his salaried job, which his supervisor testified remained available to him. He had not yet decided what practice opportunity to pursue, and did not anticipate "any kind of firm decision in the next three weeks. * * * If necessary, I can go longer. I don't want to rush into something."'
`A capable husband may not avoid his alimony obligation by quitting work; Viser v. Viser, 179 So.2d 672 (La.App.1965). After the husband had begun practice and the trial court could consider his actual circumstances, further reduction might be justified. But here the refusal to suspend was correct'

"We observe that with the exception of Rakosky v. Rakosky, supra, in the cases above cited, as well as in the other cases relied on by the appellee, the issue presented was whether the husband's alimony and child support payments should be completely suspended. Sykes v. Sykes, 308 So.2d 816 (La.App. 4th Cir.1975); Mittlebronn v. Mittlebronn, 337 So.2d 608 (La.App. 4th Cir.1976). As stated in Sykes v. Sykes, supra, at page 817:

`In order for a husband to excuse himself from the obligation to provide minimal financial assistance to a wife and children he must show that he is absolutely unemployable, not merely that he is unemployed at the time.'"
In Mosley, supra, this Court did allow a reduction of child support to an English Professor who decided to go to law school. The decision in Mosley was based primarily upon a showing by the father that a change of circumstances had occurred; his voluntary change of circumstance was reasonable and justified; he was in good faith and not attempting to avoid his alimentary obligation; and his action did not deprive his children of continued reasonable financial support. Additionally, in Mosley the Court was impressed with the fact that the father was attempting to better his station in life, which would accrue to the benefit of his children.
The record in the case before us reveals that Doctor McKenna sold his very lucrative practice and embarked on a career in law for reasons primarily culminating from his disgust in paying what he considered to be an exorbitant amount of child support. Obviously, his decision to quit work was not made in good faith. Furthermore, the record reflects that in all probability Doctor McKenna was not attempting, by attending law school, to increase his economic stature. To the contrary, it appears that Doctor McKenna was attempting to lower his economic stature so that he would be able to reduce his child support payments. This even in light of the fact that he admits his childrens' needs are the same as of the time he and his ex-wife entered into the consent judgment. For the first six months of 1981, just prior to the sale of his practice, Doctor McKenna grossed in excess of $115,000.00 from his practice. That fact notwithstanding, Doctor McKenna sold his practice, including the land, building, equipment, records, and good will for a total sum of $85,000.00. In view *618 of the above, we agree with the trial judge who concluded that while Doctor McKenna's income is much less than it was at the time of the agreed upon stipulation, he cannot under these circumstances escape his obligation of support merely because he chooses to no longer practice dentistry.
Additionally, a review of the record reflects that Doctor McKenna has some $85,000.00 in various checking and savings accounts; $50,000.00 bearing 12% interest in notes receivable payable in installments over the next three years; and an apartment building valued at approximately $225,000.00, which is presently grossing $1,850.00 per month. Accordingly, we find that Doctor McKenna has substantial assets, from which support payments could be made, and despite his reduction in income, he is capable of paying the stipulated amount. Mittlebronn v. Mittlebronn, 337 So.2d 608 (La.App. 4th Cir.1976).
Inasmuch as the divorce judgment, which reflects the agreed upon support, was by the mutual consent of the parties, and considering no appeal was taken thereon, appellant's contentions that the trial court erred in (1) imposing support payments on him; (2) not forcing the appellee to work in order to fulfill her alimony obligations; (3) failing to find that the childrens' needs amounted to $1,250.00 rather than $1,600.00; and (4) allowing the mother to waste (as appellant puts it) her assets, are not properly before this Court.
Finally, appellant contends that his constitutional rights have been violated. More particularly, appellant avers that the judgment below amounts to an imposition of involuntary servitude by forcing him to work as a dentist against his will, and likewise suppresses his right to pursue a profession of his choice.
These allegations are so ludicrous that they hardly dignify a response. There is nothing in the judgment which forces Doctor McKenna to continue practicing dentistry or quit law school. The judgment merely imposes on Doctor McKenna his inherent obligation to support his minor children. The means by which he achieves these ends are of no consequence. We find no constitutional impingement.
For the above and foregoing reasons the judgment of the district court is affirmed at appellant's costs.
AFFIRMED.