GOTHARD, Judge.
This is a divorce case. The former husband appeals judgment denying his motion *260 to terminate or decrease alimony. We affirm.
Dorothy Elaine Wood Baskett and James Houston Baskett had been married in 1959 and were separated on February 9, 1984 after a voluntary separation of more than six months. On August 6, 1985 a judgment of divorce was rendered, decreeing that Mrs. Baskett was free from fault and ordering Mr. Baskett to pay her alimony of $300.00 per month “until further orders of this court,” to pay the Willow Dale Country Club membership, to provide a gasoline credit card for her use, and to provide medical and hospitalization insurance for her. (There were no children of the marriage.) Mr. Baskett has sought to terminate or reduce alimony twice before filing the motion from which this appeal is taken, although the alimony provision began as a consent judgment in the legal separation and was continued in the divorce judgment when the couple was unable to agree on a partition of the community.
The appellant raises two issues: 1) whether the trial judge was in error in holding that his voluntarily incurred financial obligations were not a valid reason for modifying the alimony payment; and 2) whether the judge erred in failing to find that he had carried his burden of showing that changes in his financial circumstances were beyond his control.
The amended motion to terminate or decrease alimony alleges a decrease in Mr. Baskett’s monthly income resulting from the following factors: Rental property previously occupied by four tenants who paid a total of $1,000 per month now has only one tenant paying $225, a decrease of $775. He has purchased a new residence, with a note of $163 per month, and also three vacant lots, with notes of $185, $138, and $193. He now has to pay Mrs. Baskett’s gasoline charges from his own pocket, as his corporation will no longer pay her expenses, amounting to about $150 per month.
The trial judge stated the following reasons for judgment denying the motion:
He has not proved a decrease in income, and voluntarily incurred expenses for real estate investments will not be considered a change in circumstances for purposes of adjusting an alimony award. The decision to invest was an economic decision which Mr. Baskett should have made based on his financial obligations, including the obligation to pay alimony as set by the Court. He will not be encouraged to circumvent that obligation by disregarding it when making the financial decision of what investments he could afford.
The standard of review of alimony awards is stated in Rhinehart v. Rhinehart, 475 So.2d 43 (La.App. 2nd Cir.1985), at 47:
A reviewing court must give great deference to a trial court’s determination of whether the obligor spouse has shown a change of circumstances sufficient to modify or terminate an alimony award. Hamiter v. Hamiter, 419 So.2d 517 (La. App. 2d Cir.1982); Daigle v. Daigle, 339 So.2d 1266 (La.App. 1st Cir.1976).
The trial judge has much discretion in awarding alimony, and his decision will be overturned only upon a showing of abuse of that discretion. Ballanco v. Ballanco, 480 So.2d 1039 (La.App. 5th Cir.1985).
The Ballanco case involved a motion to reduce alimony by a physician, whose income was diminished because his medical partnership capitalized greater amounts of money for necessary repairs and equipment, reducing the amount available to be distributed as income. This court ordered a decrease, holding that the funds so diverted were neither unreasonable nor unnecessary, and that the decision was not entirely under his control. But, in McKenna v. Steen, 422 So.2d 615 (La.App. 3d Cir.1982), writ denied 429 So.2d 157 (La. 1983), the court found that the dentist-husband sold his dental practice at a loss, ostensibly to start law school, but actually to attempt to escape his obligation of support by lowering his income.
We have reviewed the testimony and record with both issues in mind: whether the diminution in income resulted from necessary and reasonable voluntary expendí- *261 tures, and whether it resulted at least partly from circumstances beyond his control.
Mr. Baskett’s testimony regarding the real estate investments are at best evasive and equivocal. There is nothing to indicate that in making the purchases he was doing anything more than bettering his personal estate without regard for his legal obligation of support. Under questioning by his own attorney Baskett explained the purchase of one of the lots as follows:
Q You’ve indicated that it has increased your expenses by $185 per month. What particular lot was that?
A Okay. The — Okay. That’s a lot next to my business.
Q Okay. Would that be the Arches Building?
A Yes.
Q Okay. You purchased that lot next to your business?
A Right.
Q Okay. Is that in your name or your company’s name?
A That’s in my name.
Q Why did you purchase that?
A Well, okay. I thought it would be advantageous to me to purchase the lot next to my place of business to more or less call the shots on who moves next to me and possibly if the parish comes back to — if the economy gets right, possibly some day maybe utilize it as something, something next to the business. More or less to control who would buy or who would put up a building next to me.
Q It was a business purchase?
A It was a business buy.
Q Okay. Are you receiving any income from that property?
A Yes. Not the $185, no, sir.
Q There’s no income you’re receiving from the property next to you?
A Next to me, yes.
Q Next to you?
A Right.
Q Are you receiving income or not?
A $100.00 a month.
The court took over the questioning at one point regarding Baskett’s real estate purchases:
THE COURT:
How much did you pay Morris White?
THE WITNESS:
I paid Morris White I guess $3900.
THE COURT:
And how much are you paying him per month?
THE WITNESS:
193 I think, Your Honor. Yeah, 193. Then the back lot.
THE COURT:
And what was the total amount of the purchase price of that?
THE WITNESS:
I believe it was 12,000, Your Honor.
THE COURT:
Okay. Your’re just contradicting yourself all over the place. You told me that the lot that you were paying 193 for was $9,000. Why don’t you sit down and think about it for a minute.
THE WITNESS:
No. The 185 is the $9,000 lot that’s behind it.
THE COURT:
That’s not what you said. You said the 185 was the $12,000 lot. Why don’t you start over again. What is the 185? Tell me where it is, how much the total and who you’re paying.
THE WITNESS:
Okay. The 185 lot is the lot that I pay to the — I bought that lot from the American Bank and I believe I purchased that price at $9,000 from the American Bank.
It is incredible that the president of a savings and loan association, who has dealt with real estate on a daily basis for years, should have such a poor memory for his personal transactions.
As to increased expenses beyond his control, Baskett testified that the sluggish economy was responsible for the reduced occupancy of the apartment units and that at time of trial there was only one tenant who paid $200 per month. He paid a monthly note of $500, but paid no rent to the community. He later admitted that his *262 girlfriend also occupied one of the apartments, rent free, so that two apartments were occupied and unavailable to prospective tenants. Also beyond his control, he said, was the company’s refusal to pay Mrs. Baskett’s gasoline expenses. He explained that the two other owners objected to the corporation’s paying the expenses (although they agreed to the purchase of a new car for him) and he concurred despite his position as president and manager.
The record reveals that the community owns several other assets from which Mr. Baskett alone receives all the income and he is not, as he asserts, limited to his take home pay of $1,200 per month. As noted above, the alimony and other support provisions were to remain in force “until further orders of the court,” that is until settlement of the community. The record fully supports the trial judge’s finding that no change in circumstances warranting a decrease in or termination of alimony has occurred.
Accordingly, for the reasons assigned above, this case is affirmed.
AFFIRMED.