621 So.2d 71 (1993)
Robert Eugene HOLDSWORTH, Plaintiff-Appellee,
v.
Dianna Lee Suchey HOLDSWORTH, Defendant-Appellant.
No. 24,876-CA.
Court of Appeal of Louisiana, Second Circuit.
June 23, 1993.
Rehearing Denied August 12, 1993.
*73 Blackwell, Chambliss, Hobbs & Henry by James A. Hobbs, West Monroe, for defendant-appellant.
Paul Henry Kidd, Jr., Monroe, for plaintiff-appellee.
Before SEXTON, VICTORY and STEWART, JJ.
VICTORY, Judge.
In this child custody dispute, the trial court maintained a previous award of joint custody with the father as domiciliary parent, modified visitation privileges, found both parties in contempt, ordered the mother to pay child support, and imposed sanctions on the mother for instituting custody litigation in Colorado. The mother appealed, and her former husband answered the appeal. Finding reversible error in the court's ruling on jurisdiction, the imposition of sanctions and summer visitation, we reverse as to those issues, and, as amended, affirm the award of child support.

FACTS
Robert Eugene Holdsworth ("Holdsworth") and Dianna Lee Suchey Holdsworth Goodart ("Goodart") were married in Ouachita Parish in 1984, judicially separated in 1987 and divorced in 1988. Holdsworth was awarded sole custody of their minor child, Forrest Eugene Holdsworth, who was born September 18, 1985. Goodart appealed that judgment and on March 1, 1990, after remand by this court, the trial court awarded joint custody, naming Holdsworth as the domiciliary parent.
During the pendency of the actions in Louisiana, Goodart filed separation and divorce actions in Oklahoma where she was then residing. She later moved to New Mexico, North Carolina and Colorado, where she now resides. Holdsworth currently resides in Kentucky.
The March 1, 1990 judgment declared that Ouachita Parish assumed "permanent jurisdiction" over custody of the minor pursuant to both factual findings of the court and stipulation of the parties. Although Goodart appealed that judgment, she did not attack the issue of permanent jurisdiction, and later dismissed the appeal.
In February 1991, Holdsworth, then living in Kentucky, filed a rule for support, modification of custody and visitation in Louisiana. On August 13, 1991, while the rule was still pending in Louisiana, Goodart filed a custody rule in Colorado. She alleged that a "sudden emergency" existed in that the child was experiencing psychological problems. The Colorado trial court, after a hearing on August 21, 1991, returned custody to Mr. Holdsworth and deferred jurisdiction to Kentucky.
Goodart filed a motion in Louisiana on August 20, 1991, asking the Louisiana court to defer jurisdiction to either Colorado or Kentucky. On September 11, 1991, Holdsworth answered and filed a reconventional demand seeking child support, contempt, a permanent injunction prohibiting Goodart from litigating in other states, and a bond to ensure compliance with the further orders of the Louisiana courts. All these matters were continued pending a ruling on the jurisdiction issue. On October 16, 1991, the trial court denied Goodart's request to defer jurisdiction. The Kentucky court, where Goodart had also filed, deferred jurisdiction to Louisiana.
In December 1991, Goodart filed a rule for sole custody in Louisiana. Holdsworth's February 1991 rule, September 1991 reconventional demand and Goodart's December 1991 rule were tried in January 1992. In its judgment of June 1, 1992, the trial court found that Louisiana would continue to retain permanent jurisdiction over child custody. As sanctions for filing the custody litigation in Colorado, the court permanently enjoined Goodart from instituting custody litigation in any venue other than Ouachita Parish, Louisiana, ordered her to post a $3000 bond to ensure future compliance with Louisiana court orders, and assessed her with $2,500 in attorney *74 fees, travel expenses and court costs expended by Holdsworth in the Colorado proceeding.

UCCJA JURISDICTION
First, Goodart argues that the trial court erred in determining that Louisiana would continue to retain permanent jurisdiction over all custody litigation in accordance with the stipulated provision in the March 1990 judgment. She asserts that, under the Uniform Child Custody Jurisdiction Act, jurisdiction is proper in Kentucky as that is now the child's home state.
Louisiana adopted the Uniform Child Custody Jurisdiction Act, LSA-R.S. 13:1700 et seq., (UCCJA) in 1978 with the stated purpose of avoiding jurisdictional competition in child custody conflicts, promoting interstate cooperation, litigating child custody where the child and family have the closest connections, discouraging continuing conflicts over custody, deterring the abduction and unilateral removal of children, avoiding the relitigation of another state's custody decisions and promoting the exchange of information and other mutual assistance between the courts in different states. LSA-R.S. 13:1700; Fazio v. Fazio, 587 So.2d 91 (La.App. 2d Cir.1991); Snider v. Snider, 474 So.2d 1374 (La.App. 2d Cir.1985), writ denied, 478 So.2d 903 (La.1985). The jurisdictional limitations imposed by the UCCJA are equivalent to declarations of subject matter jurisdiction. Renno v. Evans, 580 So.2d 945 (La.App. 2d Cir.1991); Counts v. Bracken, 494 So.2d 1275 (La.App. 2d Cir.1986).
LSA-R.S. 13:1702 sets forth the conditions necessary for a court to exercise jurisdiction over a child custody case as follows:
A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from the state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(2) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or
(3) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
(4)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with Paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.
B. Except under Paragraphs (3) and (4) of Subsection A, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.
C. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.
Under this statute, jurisdiction is listed in order of descending preference. Renno v. Evans, supra; Schroth v. Schroth, 449 So.2d 640 (La.App. 4th Cir. 1984). Therefore, the most favored jurisdiction is the "home state," defined by LSA-R.S. 13:1701(5) as the state in which the child lived with his parents, a parent, or a person acting as a parent for at least six consecutive months immediately preceding commencement of the action. When a *75 state cannot meet the requirements of home state jurisdiction under the UCCJA, jurisdiction may be retained in that state for a period of time due to the state's significant connection with the parties until another state acquires home state jurisdiction. Snider v. Snider, supra.

At the time of the custody decree in 1990, Louisiana had jurisdiction as the home state of the child and one parent. Holdsworth and his son continued to live in Louisiana for approximately six months after the custody decree. However, at the time Holdsworth instituted the February 1991 proceedings which resulted in the June 1992 judgment, Louisiana did not meet the home state jurisdictional requirements under LSA-R.S. 13:1702 A(1), as Holdsworth and his son had both moved to Kentucky on September 15, 1990. Further, although Louisiana had been the home state within six months before the filing of the February 1991 rule, there was no parent continuing to live in Louisiana, as both Holdsworth and Goodart had moved from the state.
Nonetheless, it is clear that Louisiana did have a significant connection with the child and the parents from the initial decree until the commencement of the modification proceedings. Because of the parties' numerous court appearances, Louisiana is a forum intimately familiar with the parties and the evidence in this case. Louisiana was the last home state of the child and no other state had acquired home state jurisdiction at the time Holdsworth instituted the modification proceedings in Louisiana in February 1991. Thus, Louisiana had jurisdiction to hear Mr. Holdsworth's February 1991 rule and the other rules filed during its pendency.
The trial court, however, erred in holding that Louisiana would retain permanent jurisdiction over all future custody litigation between these parties. A Louisiana court has continuing jurisdiction to modify its prior custody decree if it meets the jurisdiction requirements of the UCCJA when the modification is sought. Lee v. Lee, 545 So.2d 1271 (La.App. 2d Cir.1989); Counts v. Bracken, supra. In the event future modifications of custody are sought, jurisdiction must be determined under the UCCJA at that time. Should that occur, another state may have become the home state of the child or have otherwise become the preferred venue under the UCCJA. While the trial court was correct in exercising jurisdiction over the instant litigation, permanent jurisdiction may not be retained in child custody disputes under the UCCJA.
Further, the contention that Louisiana would have permanent jurisdiction over all future child custody disputes because the parties agreed to it in the March 1990 judgment is without merit. Subject matter jurisdiction, such as that exercised in resolving child custody disputes, cannot be conferred by consent of the parties. LSA-C.C.P. Arts. 2, 3 and 10; Jones v. Shadwick, 601 So.2d 371 (La.App. 5th Cir.1992); Renno v. Evans, supra; Fazio v. Fazio, supra.

SANCTIONS
Incident to determining that Louisiana retained permanent jurisdiction over child custody, the trial court imposed several sanctions on Goodart for instituting the August 1991 custody litigation in Colorado. First, the court ordered Goodart to post a $3,000 cash bond as security against her filing subsequent custody actions outside of Ouachita Parish, and to ensure future compliance with court orders. Second, the court ordered Goodart to reimburse Holdsworth $2,500 for travel expenses, attorney fees and court costs expended to defend the Colorado suit. Third, the court permanently enjoined Goodart from instituting any type of custody litigation regarding the child in any venue other than Ouachita Parish. As discussed above, we have already ruled that jurisdiction for future custody litigation, should any become necessary, may be proper in another state under the UCCJA. The trial court's order with regard to the cash bond and permanent injunction is therefore vacated.
The $2,500 award for travel expenses, attorney fees, and court costs is also vacated. The UCCJA provides for the *76 reimbursement of travel and other expenses, including attorney fees, when an action is dismissed by a Louisiana court based on forum non conveniens, where jurisdiction is declined by reason of a party's conduct, or when it is necessary to enforce the custody decree of another state in a Louisiana court. LSA-R.S. 13:1706(G), 13:1707(C), 13:1714(B). However, there is no authority under the UCCJA for a Louisiana court to order one party to reimburse expenses incurred by the other party for litigation in another state. Colorado, rather than Louisiana, would have the authority to make such an award. In fact, the record reflects that such a claim was made in the Colorado court and rejected.

VISITATION
In addition to other specific visitation set out in the joint custody implementation plan, the trial court granted Goodart visitation with her son for the entire summer, less two weeks awarded to Holdsworth. The court also ordered that in the event Holdsworth arranged for the child to visit his stepgrandparents in England, he would be entitled to an additional two week summer visitation.
Goodart asserts that the court's schedule of summer visitation deprives her of needed contact with her child. She requests that the proposed visit to England be taken while Holdsworth would otherwise have custody, instead of reducing her summer visitation by an additional two weeks.
Joint custody contemplates a sharing of physical contact with the children, although an equal sharing of custody is not mandated. Pahal v. Pahal, 606 So.2d 1359 (La.App. 2d Cir.1992); Foy v. Foy, 505 So.2d 850 (La.App. 2d Cir.1987); Hickman v. Hickman, 459 So.2d 140 (La.App. 2d Cir.1984). Substantial time, rather than strict equality of time, is mandated by the legislative scheme providing for joint custody of children. Carroway v. Carroway, 441 So.2d 494 (La.App. 2d Cir.1983). Every child custody case must be viewed on its own peculiar set of facts and the relationships involved, with the paramount goal of reaching a decision which is in the best interest of the child.
In Foy v. Foy, supra, the father was awarded domiciliary custody and the mother was granted physical custody one weekend per month, alternating holidays, and three weeks in the summer, which totaled approximately 48 days per year. In Carroway v. Carroway, supra, the mother was awarded domiciliary custody and the father was granted approximately 83 days of physical custody per year. In both cases, this court found that the trial court had denied frequent and continuing physical contact with the non-domiciliary parent and remanded for implementation of a new joint custody plan.
Under the circumstances presented here, we find that Goodart should not be deprived of her son for an additional two weeks for overseas visit(s) with the stepgrandparents. Although such visits may have great educational value for the child, Goodart, who lives hundreds of miles from her son and cannot visit him on weekends, should have visitation with her son for all of the summer, save two weeks for Holdsworth. If Holdsworth chooses to send his son overseas to visit his stepgrandparents, he will have to do so during his two weeks during the summer, or at such other time as the child is with him.

CHILD SUPPORT
Holdsworth complains in his answer that the trial court erred in its application of the child support guidelines when it determined Goodart's child support obligation to be $200 per month. He submits that Goodart's earning potential should have been used to calculate the amount of her support obligation.
Under LSA-R.S. 9:315.9, in calculating a child support obligation, if a party is voluntarily unemployed or underemployed, child support is to be based on a determination of income earning potential unless the party is mentally or physically incapacitated or is caring for a child of the parties under the age of five years. Because the trial court failed to include in its calculation *77 the amount of Goodart's earning potential, the amount of child support set by the court must be modified. Since the record contains sufficient information upon which to make a child support determination under the guidelines, a remand to the trial court is not necessary. See State v. Flintroy, 599 So.2d 331 (La.App. 2d Cir.1992); Crockett v. Crockett, 575 So.2d 942 (La. App. 2d Cir.1991).
Before voluntarily terminating her employment in Oklahoma to move with her new husband to New Mexico, Goodart earned approximately $43,000 per annum. In cases where a reduction in child support is sought, an obligor has been found to be in bad faith where he has a high paying job and appears to change circumstances voluntarily to reduce or avoid his child support obligation. McKenna v. Steen, 422 So.2d 615 (La.App. 3d Cir.1982), writ denied, 429 So.2d 157 (La.1983).
Here, Goodart left her employment to accompany her husband as he sought suitable employment in another state. There is no indication that Goodart terminated her employment simply to reduce her child support obligation. However, since they moved to Colorado in January of 1991, nothing has prevented Goodart from obtaining employment. Her claim of physical illness is unsupported by any medical testimony and was rejected by the trial court. We conclude, as did the trial court, she is voluntarily unemployed.
Recognizing the nationwide unemployment problem, we are hesitant to accept Goodart's previous income of $43,000 per annum as definitive evidence of her earning potential. However, she failed to produce any evidence of the availability of work and the prevailing wage for employment in Pueblo, Colorado. Absent evidence that work is not available or is available only at a lower salary, we must hold Goodart's income earning potential is $43,000 per annum, the amount of her salary at her last job.
The guidelines provide that child support obligations are to be determined by the combined adjusted gross income of the parties. Income is defined as actual gross income of a party if the party is employed to full capacity and the potential income of a party if the party is voluntarily unemployed. LSA-R.S. 9:315(6). The record shows that Holdsworth's income is $2,500 per month and we have set Goodart's income potential at $3,570.24 per month. Therefore, the parties' combined adjusted gross monthly income is computed at $6,070.24 per month. Goodart's income constitutes 58.8 percent of this amount. Under the child support guideline tables, based upon a combined monthly adjusted gross income of $6,070.24 per month, the amount of child support due for one child is $800. Goodart's child support obligation is 58.8 percent of this amount, or $470.40 per month. Therefore, we amend the trial court judgment to increase Goodart's child support obligation to $470.40 per month. Having determined that the trial court improperly calculated the amount of child support obligation, we pretermit a discussion of Holdsworth's complaint that the trial court improperly deviated from the guidelines.
Holdsworth also complains that the trial court erred when it failed to order the payment of child support retroactive to the date of judicial demand. LSA-R.S. 9:310 mandates that an award for child support be retroactive to the filing date of the petition unless the court finds good cause for not making the award retroactive. Thomas v. Thomas, 605 So.2d 237 (La.App. 2d Cir.1992); Key v. Willard, 488 So.2d 1147 (La.App. 2d Cir.1986). The burden is on the obligor parent to show good cause for not making the award retroactive.
The trial court ordered the award of child support retroactive to September 11, 1991, the date on which Holdsworth filed his answer and reconvention to Goodart's rule to defer jurisdiction. It found that to order the support retroactive to the February 1991 filing date of the original rule would work an undue hardship on Goodart, who was unemployed. The trial court is vested with much discretion in fixing awards of alimony and child support. Such determinations will not be disturbed *78 unless there is a clear abuse of discretion. Meyer v. Meyer, 371 So.2d 1304 (La.App. 4th Cir.1979), writ denied, 373 So.2d 546 (La.1979). Finding no abuse of discretion in the trial court's determination that good cause existed for not making the child support award retroactive, we decline to alter the effective date of the award.
Holdsworth further contests the trial court's order that the parties each pay 50% of the child's medical expenses not covered by health insurance. He submits that it would be more equitable to allocate these expenses in accordance with each parent's percentage of gross income. Such matters lie within the discretion of the trial court.[1] We find no manifest error in the trial court's equal allocation of these expenses.

COSTS
Goodart contends that costs should have been assessed equally against the parties since Holdsworth was also found in contempt of court.
The trial court may render judgment against any party for costs or part thereof as it considers equitable. LSA-C.C.P. Art. 1920. The assessment of costs lies within the trial court's discretion and will not be reversed unless that discretion is abused. Walker v. Bankston, 571 So.2d 690 (La.App. 2d Cir.1990). However, inasmuch as Goodart has been successful on several issues on appeal, we determine that each party should be cast with one-half of the court costs in the trial court and in this court.

DECREE
Accordingly, for the foregoing reasons, we reverse the trial court's determination that Louisiana has permanent jurisdiction over future child custody disputes between these parties, vacate the sanctions imposed by the trial court, amend the summer visitation schedule to disallow two additional weeks to Holdsworth, and amend the award of child support to order Goodart to pay $470.40 per month to Holdsworth. In all other respects, the trial court judgment is affirmed. Costs in the trial court and this court are to be split equally between the parties.
REVERSED IN PART, AMENDED IN PART, AND AFFIRMED AS AMENDED.

APPLICATION FOR REHEARING
Before SEXTON, LINDSAY, VICTORY, BROWN and STEWART, JJ.
Rehearing denied.
NOTES
[1] Extraordinary medical expenses, defined as uninsured expenses over one hundred dollars for a single illness or condition, are be added to the basic child support obligation and therefore assessed proportionately. LSA-R.S. 9:315(1); 9:315.5. In this case, however, the trial court described the expenses simply as "medical and dental expenses not covered by insurance."