**CLEVELAND SPEARS, III**        *        NO. 2023-CA-0664

**VERSUS**        *

        **COURT OF APPEAL**

**KIMBERLY FAYE MCCLAINE**        *

        **FOURTH CIRCUIT**

        *

        **STATE OF LOUISIANA**

        * * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-01701, DIVISION "K"
Honorable Bernadette D'Souza, Judge
* * * * * *
**Chief Judge Terri F. Love**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Rosemary Ledet, Judge
Nakisha Ervin-Knott)

Marc D. Winsberg
Jonathan D. Gamble
WINSBERG & ASSOCIATES, LLC
650 Poydras Street, Suite 2050
New Orleans, LA 70130

        COUNSEL FOR PLAINTIFF/APPELLANT

Kim Ngan Nguyen
Gordon J. Kuehl
HOFFMAN NGUYEN & KUEHL
643 Magazine Street, Suite 401
New Orleans, LA 70130

        COUNSEL FOR DEFENDANT/APPELLEE

        **AFFIRMED**
        **January 10, 2024**

*TFL*
*RML*
*NEK*

This appeal involves a domestic dispute between parents of a minor child regarding the proper jurisdiction to hear custodial issues. Appellant Cleveland Spears—the father—resides in New Orleans, Louisiana. Appellee Kimberly Faye McClaine—the mother—resides in Houston, Texas, with the minor child—a boy.[1]

Mr. Spears and Ms. McClaine, who were never married, entered a Consent Judgment on June 6, 2020. They agreed, in relevant part, that the principal residence of Ms. McClaine and the minor child would be Houston, Texas. They also agreed that any future custodial disputes would be filed in Civil District Court, Orleans Parish, State of Louisiana ("Civil District Court"), as long as one party resided in Orleans Parish.

Beginning in January 2023, both parties filed actions to modify custody— Mr. Spears filed in Civil District Court and Ms. McClaine filed in Family Court of Harris County, Texas ("Texas Family Court"). Mr. Spears requested that the Texas Family Court decline jurisdiction, and thereafter, filed a motion in Civil District Court for that court to retain exclusive jurisdiction of custodial matters.

---

[1] The minor child's date of birth is May 18, 2019.

1

Ms. McClaine sought a temporary restraining order against Mr. Spears in Texas Family Court. She also countered Mr. Spears' motion for Civil District Court to retain jurisdiction with a motion to transfer all custodial matters to Texas Family Court on the grounds of *forum non-conveniens* or inconvenient forum.

On appeal, Mr. Spears seeks review of the trial court's judgment from Civil District Court which denied his motion to retain jurisdiction and granted Ms. McClaine's motion to transfer.

The record supports the trial court applied all relevant factors in reaching its determination that Civil District Court was an inconvenient forum to resolve the parties' custodial issues. Finding no abuse of the trial court's discretion to deny Mr. Spears' motion to retain jurisdiction and grant Ms. McClaine's motion to transfer, we affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Spears filed a Petition to Establish Custody of the minor child on February 19, 2020, in Civil District Court. In response to Mr. Spears' petition, Ms. McClaine filed an Answer and Reconventional Demand to establish paternity, custody, and support. Thereafter, on June 5, 2020, the parties entered a Consent Judgment. Pertinent provisions of the Consent Judgment included the following: (i) Mr. Spears was declared the minor child's biological father; (ii) joint custody was awarded to both parties; (iii) a physical custody schedule was established; (iv) the parties agreed that Civil District Court would remain the venue and jurisdiction for all disputes related to custody of the minor child as long as one party remained a resident of Orleans Parish; and (v) Ms. McClaine and the minor child were

allowed to relocate to Houston, Texas ("Houston") as the minor child's principal residence, effective June 1, 2020.

There was no active litigation between the parties until January 18, 2023. At that time, Mr. Spears filed a Rule for Contempt and Motion to Modify Consent Judgment. Thereafter, Ms. McClaine filed a petition to make the June 5, 2020 Consent Judgment executory in Texas and an "Original Petition in Suit Affecting the Parent-Child Relationship Seeking Modification of Out-of-State Order." In response, Mr. Spears sent Ms. McClaine a notice of intent to relocate the principal residence of their son to Orleans Parish. Additionally, Mr. Spears requested that the Texas Family Court dismiss Ms. McClaine's action because "Texas lacks subject matter jurisdiction. . . ." After receiving notice of Mr. Spears' intent to relocate their minor child, Ms. McClaine filed an "Emergency Motion for Temporary Restraining Order and Temporary Orders After Hearing in the Texas Proceedings" to prevent Mr. Spears from moving the minor child to Orleans Parish. The Texas Family Court issued temporary restraining order(s) on March 6, 2023, ordering that Houston would remain the minor child's principal residence until further orders.

Mr. Spears followed-up with the motion to retain jurisdiction in Civil District Court, pursuant to La. R.S. 13:1814. In support of the motion to retain jurisdiction, Mr. Spears cited the Consent Judgment, whereby the parties had agreed to confer jurisdiction over custodial matters to Civil District Court as long as one parent remained an Orleans Parish resident.

In response, Ms. McClaine filed the motion to transfer. Ms. McLaine argued that the Texas Family Court had jurisdiction and was the more convenient forum

over Civil District Court to conduct custodial proceedings involving the minor child.

The Texas Family Court proceedings were stayed pending the outcome of the Civil District Court hearing on the respective motions to retain jurisdiction and to transfer. Prior to the hearing on the parties' motions, the trial court conducted a judicial communication with the Texas Family Court. The Texas Family Court expressed that Civil District Court lacked jurisdiction and that it wanted to retain jurisdiction. In response, Mr. Spears set a date for a contradictory hearing.

Ms. McClaine and Mr. Spears were the only witnesses at the hearing on the motions. Their respective testimonies are summarized as follows:

### *Mr. Spears' Testimony*

Mr. Spears' testimony began with examination by Ms. McClaine's counsel. Mr. Spears acknowledged that the minor child's primary residence has been in Houston, pursuant to the Consent Judgment reached in June 2020. He verified that the minor child has attended a school in Houston since August 2020, and admitted that Ms. McClaine and he were in the process of applying to other schools in Houston to continue their child's schooling, including a dual language school.

Mr. Spears testified that his contempt complaint against Ms. McClaine resulted from his belief that she had been non-compliant with the Consent Judgment's requirements to assist in their child's travel from Houston to New Orleans for his visits with Mr. Spears. Mr. Spears confirmed ownership of a Houston property he uses for Houston visitations with the minor child and verified that the child has a room at this property. He admitted that the minor child's proposed new dual language school is about a block away from his Houston

4

property.  Mr. Spears said he entertains at the property and allows the minor child to have sleepovers, in particular, with a friend named George.

Mr. Spears noted that he also visits with the minor child in New Orleans.  He also acknowledged using his visitation time to travel with the child to New York, Colorado, Georgia, and Mexico.  Mr. Spears did not dispute the minor child's enrollment in extra-curricular activities in Houston, such as language, soccer, swim, and music classes, along with the child's memberships in the Houston Children's Museum, the Museum of Natural Sciences, and the Houston Zoo.  As to the minor child's' medical care, Mr. Spears agreed that the child has undergone surgeries done by Houston physicians and receives treatment by Houston physicians for his allergies.

In addition to owning property in Houston, Mr. Spears verified that his advertising agency produces a festival in Houston.  The festival employs two workers.

Mr. Spears acknowledged that he made an appearance before the Texas Family Court regarding its jurisdiction.  He also conceded that he was served with the temporary injunction in Houston.

On examination by his attorney, Mr. Spears iterated that he lives and votes in New Orleans.  Moreover, his business ventures are primarily located in New Orleans.  He reiterated that he has only two employees in Houston.

Mr. Spears testified that the clause in the Consent Judgment allowing jurisdiction to remain in Orleans Parish was an important consideration in his agreement to the Consent Judgment.   He stated that he faces 100% of the tremendous travel burden in exercising his visitation rights and maintained it would be even more of a burden if he had to travel to Texas to resolve custodial

disputes. Mr. Spears admitted that he travels; however, he maintained that he desires to exercise his visitation rights in New Orleans. Mr. Spears also pointed out that the minor child has family, friends, and engages in social and extracurricular activities in New Orleans. Mr. Spears advised that he has inhabited his Houston property since October 2022, and has stayed with the minor child at the property less than thirty times. Mr. Spears rents the property when he is not there.

Mr. Spears acknowledged instigating the litigation that ensued after entry of the Consent Judgment. He re-submitted that he filed his contempt motion because he believed Ms. McClaine had not honored the Consent Judgment's travel provisions to assist in the minor child's visits with him in New Orleans. Mr. Spears insisted that jurisdiction over custody disputes should remain in Civil District Court because the parties negotiated an agreement to that effect. He stressed that he should not endure any additional travel burdens to maintain his relationship with his son by having custodial disputes litigated in Texas Family Court for the convenience of Ms. McClaine.

On cross-examination by Ms. McClaine's attorney, Mr. Spears conceded that in the event a dispute arose as to the minor child's medical care, the physicians who performed the child's surgical procedures and the medical records relating to the child's allergies and urology treatment were in Houston. Notwithstanding, Mr. Spears noted their son's nut allergy was originally diagnosed in New Orleans and that the minor child also has a New Orleans pediatrician. He also claimed the location of the minor child's medical providers should not have any bearing on the proper jurisdiction because Ms. McClaine and he did not presently have any existing disputes over their child's medical care.

6

Mr. Spears conceded that his two Houston employees could be called as witnesses. He also conceded that it would be a burden for all of Ms. McClaine's potential Texas witnesses to travel to New Orleans—where they do not have homes—to testify in a custody dispute. However, he countered it would also be a burden for his potential New Orleans witnesses to travel to Houston.

Mr. Spears did not dispute Ms. McClaine's 2023 custodial calendar which showed the minor child visited with him in New Orleans for a total of seventeen days from February 2023, through May 2023, and another four days in Atlanta. He admitted that the minor child was in Houston on the remaining days.

### *Ms. McClaine's Testimony*

Ms. McClaine relocated back to Houston in June 2020. She stated that she has lived in Houston with the minor child since that time. Ms. McClaine's mother, her sister, and her sister's two children also presently reside with Ms. McClaine and the minor child. Ms. McClaine said she had worked for a health care provider in New Orleans at the time of the Consent Judgment; however, the job allowed her to work remotely from Houston. The New Orleans job ended in April 2022, and now Ms. McClaine works for a Houston investment company.

Ms. McClaine testified that she filed suit in Texas Family Court to make the Consent Judgment executory and to establish custody after Mr. Spears initiated litigation in January 2023. Ms. McClaine said Mr. Spears was served with the temporary injunction at his Houston home or at their son's school. She contended that she had never made any actual appearances in Civil District Court, outside of the present proceedings associated with the motion to transfer. Ms. McClaine explained that she filed her pleadings in Texas Family Court because "everything pertaining to our son, his activities, his schools, his you know, faith-based

7

community, his friends, a lot of his primary relationships are in Houston, Texas and I believe that's the appropriate place for filing."

Ms. McClaine expounded that the minor child spends time at Mr. Spears' Houston residence at least once a month, emphasizing that the child has his own room, toys, clothing, and visits with friends at the residence. According to Ms. McClaine, Mr. Spears bought the residence, in part, because it was near the Houston dual language school they want their son to attend.

Ms. McClaine stated that although Mr. Spears exercises his visitation rights with the minor child amongst Houston, New Orleans, and other vacation destination cities, she predominantly exercises her custodial time in Houston. Ms. McClaine added that her work in the Houston area as a corporate controller and consultant and her present position as CFO and vice-president of a utility services company have required her to work primarily out of Houston.

As acknowledged by Mr. Spears, Ms. McClaine testified that the choices for the minor child's schooling are all in the Houston area. Ms. McClaine amplified that the bulk of the child's healthcare providers, such as his allergist and ENT providers, are from Houston. She maintained that the minor child's other childcare providers, such as her mother, sister, a niece, and close friends are also available in Houston. Ms. McClaine added the child is involved in numerous social and extra-curricular activities in Houston. She stressed that his best friend lives in Houston.

As to the Consent Judgment, Ms. McClaine clarified that their son was only thirteen months old when she entered the Consent Judgment. She said many things have changed since that judgment. In particular, the minor child and she now have a strong network of friends, family, and activities that are now based out of Houston. Ms. McClaine re-stated that it would be a hardship for her and the

8

Houston-based friends, family, educators, and healthcare providers to come to Civil District Court to testify in the event of a custodial dispute.

On cross-examination, Ms. McClaine admitted that her father resides in New Orleans and that she and her sister stayed with him during the motion to transfer proceedings. Ms. McClaine denied Mr. Spears' allegation that she has refused continued assistance with the travel arrangements to allow Mr. Spears to see their son. Ms. McClaine maintained that she does the airport runs and claimed her father has also assisted in the travel exchange. Ms. Spears confirmed her job status with the utility services company; however, she stated she did not have much flexibility in terms of being able to travel.

Ms. McClaine verified that she had counsel when she entered the Consent Judgment and understood the Consent Judgment's terms designated Civil District Court to hear future custodial disputes. Nonetheless, she maintained that Mr. Spears spends more time at his Houston property with their son than in New Orleans.

### Trial Court Judgment

After taking the matter under advisement, the trial court denied Mr. Spears' motion to retain jurisdiction and granted Ms. McClaine's motion to transfer. In its reasons for judgment, the trial court noted, in part, that the Consent Judgment was not controlling because La. C.C.P. art. 3 does not permit parties to confer jurisdiction by consent. As will be discussed, *infra*, the trial court then applied the eight factors outlined in La. R.S. 13:1819(B) to consider in determining the appropriate forum for child custody disputes in reaching its decision to decline supervisory jurisdiction and transfer the matter to Texas Family Court.

This appeal followed.

9

**ASSIGNMENTS OF ERROR**

Mr. Spears argues the following three assignments of error: (1) the trial court erred in declining to exercise its subject matter jurisdiction on the basis that Texas is the more appropriate forum for the custody proceeding; (2) the trial court committed legal error in declaring the jurisdictional provision of the Consent Judgment null and unenforceable; and (3) the trial court committed legal error in transferring jurisdiction of all child support matters to the Texas Family Court.

Assignments of error numbers one and three essentially require resolution of the same issue of *forum non-conveniens*—whether the trial court properly determined that the Texas Family Court is the proper forum to hear the parties' custodial disputes—whereas, the issue that requires resolution in assignment of error number 2 is the enforceability of the Consent Judgment's jurisdictional provision. Accordingly, this Court shall first consider the enforceability of the jurisdictional provision in the Consent Judgment inasmuch as a finding of enforceability would render moot any questions regarding the proper judicial forum.

**DISCUSSION**

***Enforceability of Consent Judgment's Jurisdictional Provision***

Mr. Spears represents that the parties knowingly and voluntarily agreed to the Consent Judgment's jurisdictional provision in exchange for his agreement to permit the minor child and Ms. McClaine to relocate to Houston. He emphasizes that Ms. McClaine was aware at the time the Consent Judgment was confected that potential custodial disputes could arise, notwithstanding that Ms. McClaine and the minor child had relocated to Houston. Mr. Spears also urges that the Consent Judgment's provision to allow Orleans Parish to retain jurisdiction is plainly

authorized under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). For these reasons, Mr. Spears maintains that the trial court committed legal error in declaring the provision unenforceable. We find Mr. Spears' arguments misplaced.

As noted by the trial court, La. C.C.P. art. 3 provides, in part, that "[t]he jurisdiction of a court over the subject matter of an action or proceeding cannot be conferred by consent of the parties." Our jurisprudence has established that this precept especially holds true in those matters where parties attempt to confer jurisdiction by consent to resolve child custody disputes. *See Wootton v. Wootton*, 49,001, p. 12 (La. App. 2 Cir. 5/14/14), 138 So.3d 1253, 1260.

In *Wootton*, the family had been living in Caddo Parish, Louisiana, at the time the parents separated. Thereafter, the mother and children moved to Mississippi. The parents entered a consent judgment and joint custody agreement whereby the mother was designated the domiciliary parent; however, the consent judgment stated that Louisiana "shall retain custody jurisdiction over all future custody litigation involving these parties and their children and child support issues." *Wootton*, 49, 001, p. 1, 138 So.3d at 1254. A custodial dispute arose and the father filed a motion to transfer venue from Caddo Parish to Ouachita Parish— his current residence. After the Caddo Parish Court granted the father's motion to transfer the matter to Ouachita Parish, the mother filed exceptions, including exceptions of no jurisdiction and *forum non conveniens*, maintaining that Mississippi presently had jurisdiction and was the proper forum to resolve the custodial dispute. *Id.* The district court sustained the mother's exception of no jurisdiction, reasoning that Ouachita Parish could not assert jurisdiction because the children had never resided there; moreover, it noted that Mississippi was the

home state of the children under the UCCJEA. *Id.*, 49,001, p. 4, 138 So.3d at 1255-56. On appeal, the *Wootton* Court found the father's argument that Louisiana should retain permanent jurisdiction over all future child custody disputes because the parties' consent judgment contained a provision to that effect lacked merit. *Id.*, 49,001, p. 12, 138 So.3d at 1260. In relying on La. C.C.P. art. 3 and *Holdsworth v. Holdsworth*, 621 So.2d 71 (La. App. 2d Cir. 1993), the decision concluded that "[s]ubject matter jurisdiction, such as that exercised in resolving child custody disputes, cannot be conferred by consent of the parties." *Id.*

In *Holdsworth*, the father was initially awarded sole custody of the minor child. On remand, the trial court awarded joint custody, with the father being designated the primary domiciliary parent. The March 1990 judgment included a stipulation by the parties that Ouachita Parish (Louisiana) would have permanent jurisdiction over all custodial disputes. The mother ultimately relocated to Colorado and the father moved to Kentucky. After a custodial dispute arose, the mother filed a motion in Louisiana to defer jurisdiction to either Colorado or Kentucky. The trial court denied the mother's request. After a hearing on the mother's request for sole custody and the father's reconventional demand, the trial court found, in part, that Louisiana would continue to retain permanent jurisdiction and permanently enjoined the mother from instituting custody litigation in any venue other than Ouachita Parish, Louisiana. *Id.*, 621 So.2d at 73.

On appeal, the mother argued that the trial court erred in finding that Louisiana would retain permanent jurisdiction premised on the March 1990 stipulation. The appellate court determined that Louisiana had retained jurisdiction to hear the dispute because Louisiana was the last home state of the child, Louisiana was intimately familiar with the parties and the evidence, and that no

other state had acquired home state jurisdiction at the time the father commenced modification proceedings. *Id.*, 621 So.2d at 75. Nonetheless, *Holdsworth* found that the trial court erred in holding that Louisiana would retain permanent jurisdiction over all future custody disputes, explaining that "[a] Louisiana court has continuing jurisdiction to modify its prior custody decree [only] if it meets the jurisdiction requirements of the UCCJA when the modification is sought." *Id.* However, if future modifications were sought, the decision found that jurisdiction must be determined at the time of the modification request. *Id.* Therefore, the *Holdsworth* Court opined that "the contention that Louisiana would have permanent jurisdiction over all future child custody disputes because the parties agreed to it in the March 1990 judgment is without merit." *Id.* The appellate court reasoned that subject matter jurisdiction, particularly in child custody matters, cannot be conferred by consent. *Id.*

As clarified in *Holdsworth*, *supra*, the jurisprudential principles that a consent judgment cannot confer jurisdiction or compel the trial court to retain permanent, exclusive jurisdiction extend to those cases, such as the present matter, where a trial court may have had jurisdiction at the time of the initial custody award. Consequently, Mr. Spears' argument that the trial court committed legal error because it was mandated to enforce the jurisdictional provision of the Consent Judgment is not meritorious.

We now review whether the trial court erred in declining to retain jurisdiction and transferring the custody matter to Texas Family Court on the grounds of *forum non conveniens*.

***La. R.S. 13:1814-Retention of Jurisdiction; La. R.S 13:1819-Forum Non Conveniens***

13

La. R.S. 13:1814 provides the parameters for a trial court to retain continued jurisdiction. La. R.S. 13:1814 states, in relevant part, the following:

A. Except as otherwise provided in R.S. 13:1816, a court of this state which has made a child custody determination consistent with R.S. 13:1813 or 1815 has exclusive, continuing jurisdiction over the determination until:

(1) A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; . . .

In the case *sub judice*, Mr. Spears and Ms. McClaine do not contradict that they and the minor child were Orleans Parish residents at the time the Consent Judgment was entered. Therefore, in accordance with La. R.S. 13:1813 (A),[2] Civil District Court clearly had jurisdiction to make the initial award of joint custody as reflected in the Consent Judgment.[3] As such, it also had the resulting authority to make a determination as provided for under both La. R.S. 13:1814 and La. R.S. 13:1819 to continue or decline that jurisdiction.

La. R.S. 13:1819 specifies the factors a trial court should consider to make a jurisdictional determination and decide the appropriate forum in child custody matters. *See Burdes v. Skidmore*, 2019-0263, pp. 6-7 (La. App. 4 Cir. 3/22/19), 267 So.3d 192, 195-96.

La. R.S. 13:1819 states, in relevant part, the following:

A. A court of this state which has jurisdiction under this Act to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a

_____

[2] La. R.S. 13:1813(A) provides, in relevant part, that a court of this state has jurisdiction to make an initial custody determination only if "[t]his state is the home state of the child on the date of the commencement of the proceeding . . ."

[3] *See also Monteleone v. Monteleone*, 591 So.2d 1228, 1234 (La. App. 4th Cir. 1991),which determined that a consent judgment on child custody constitutes a considered decree.

more appropriate forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or request of another court.

B. Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

(1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child.

(2) The length of time the child has resided outside this state.

(3) The distance between the court in this state and the court in the state that would assume jurisdiction.

(4) The relative financial circumstances of the parties.

(5) Any agreement of the parties as to which state should assume jurisdiction.

(6) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child.

(7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence.

(8) The familiarity of the court of each state with the facts and issues in the pending litigation.

Here, the trial court's reasons for judgment document that the court applied all of the above-enumerated factors in its decision. The trial court's reasons for judgment are summarized as follows:

(i)     Domestic Violence

The trial court noted that there was no history of domestic violence.

(ii)     Length of Time Child has Resided Outside this State

15

The trial court cited testimony from Mr. Spears and Ms. McClaine that the minor child has resided outside the state since June 1, 2020. Moreover, the trial court referenced testimony from each party that the minor child. attends school in Houston and that his education will continue in Houston. The trial court also considered Ms. McClaine's testimony that the majority of the minor child's primary health care providers, educators, extracurricular activities, friends, and family members are based in Houston, as well as the fact that Mr. Spears has a Houston home which he uses for his Houston visits with the minor child.

(iii)  <u>The Distance Between Texas Family Court and Civil District Court</u>

The trial court expressed that the distance between Texas Family Court and Civil District Court is approximately three-hundred and seventy miles and about a five (5) to six (6) hour driving distance. The trial court considered the hardship that this distance would have on the Houston healthcare providers, educators, family, and friends if required to travel from Houston to Orleans Parish to testify. The trial court considered Mr. Spears' testimony that it would also be a hardship on Mr. Spears and his New Orleans witnesses to travel to Houston. However, the trial court found that the overwhelming number of potential witnesses resided in Houston. Emphasizing Ms. McClaine's and the minor child's Houston residency and that Mr. Spears had a home in Houston, the trial court concluded that Mr.

16

Spears would incur lesser expenses and inconvenience if jurisdiction of this matter was transferred to Houston.

(iv)    <u>The parties' financial circumstances</u>

The trial court found that both parties were gainfully employed. However, it concluded that Mr. Spears, who owns his company and travels extensively, had more flexibility in his work schedule to travel out of state than Ms. McClaine, who was based in Houston and did not travel for work.

(v)    <u>The Parties' Agreement as to Jurisdiction</u>

The trial court acknowledged the Consent Judgment stipulated that jurisdiction would remain in Civil District Court. However, the trial court mitigated this factor in its reiteration that jurisdiction could not be conferred via consent so as to permanently circumvent a trial court's authority to continue or decline jurisdiction.

(vi)    <u>Nature/location of the Evidence to Resolve the Litigation, Including the Child's Testimony</u>

The trial court restated its findings that the overwhelming amount of evidence, including the witnesses and the child, hail from Houston and its surrounding area. The trial court added that the child's daily schedule would be disrupted if required to travel to Civil District Court, rather than to remain in Houston.

(vii)    <u>The Ability of Each Court to Decide the Issues Expeditiously and Present the Evidence</u>

The trial court found the bulk of any potential evidence and the witnesses were more readily accessible in the Houston area, therefore,

17

the Texas Family Court had the better procedures to present the evidence.

(viii)  Familiarity of Each Court with the Facts and Issues

In applying this factor, the trial court acknowledged that Mr. Spears' initial custody petition and the Consent Judgment were filed and signed in Civil District Court in 2020.  Notwithstanding, it noted that the parties had never litigated any contested matters in Civil District Court before the present dispute.  Accordingly, the trial court declared that it had no underlying familiarity with the case or the litigants.  In comparison, the trial court pointed out that Texas Family Court had recently issued a temporary restraining order on March 2, 2023, ordering that Harris County, Texas remain the minor child's principal residence, thus, prohibiting Mr. Spears from relocating the child.   Although recognizing that the Texas Family Court proceedings were currently stayed, the trial court concluded that the Texas Family Court was more familiar with the present facts, parties, and issues pending in the litigation.  Moreover, the Texas Family Court indicated its desire to retain jurisdiction in its conference with the trial court.

Mr. Spears complains in his assigned errors that the trial court improperly weighed these factors.  In particular, he argues that the trial court disregarded the amount of hardship and inconvenience he and his witnesses would incur in transferring this matter to Texas Family Court, the child's Louisiana significant relationships, and the validity of the Consent Judgment.   We find these arguments are not meritorious.

Contrary to Mr. Spears' arguments, as noted, *supra*, the trial court clearly considered the child's Louisiana relationships and the convenience of Mr. Spears and his potential witnesses in its decision. Mr. Spears' dissatisfaction with the trial court's conclusions upon application of La. R.S. 13: 1819(B) factors is insufficient to set aside the trial court's findings. In general, the statute governing *forum non conveniens* confers a great amount of discretion on the trial court in determining if the conditions for *forum non conveniens* have been met. *See Minot obo Minot v. Waffle House, Inc.*, 2020-044, p. 9 (La. App. 4 Cir. 10/2/20), 365 So.3d 709, 716. Accordingly, an appellate court reviews a trial court's ruling on *forum non convdeniens* under an abuse discretion standard and that ruling will not be disturbed absent an abuse of that discretion. *Id.*

Here, the trial court determined that the minor child's residency, daily life, most significant connections, and the best available evidence concerning the child's education, health, and social activities were centered in Houston. Well-settled jurisprudence has found that Louisiana courts have lost jurisdiction and/or have become an inconvenient forum when another state became the child's home state and the place where the most relevant evidence concerning the child was available. *See Wootton*, 49,001, p. 11, 138 So.3d at 1259. That is clearly what transpired in the present matter. Therefore, we find no abuse of the trial court's discretion in declining jurisdiction and transferring this matter to Texas Family Court based on its application of the La. R.S. 13:1819(B) factors.

Mr. Spears also represents that the trial court erred because it did not consider as a factor that Louisiana retained jurisdiction over the issue of child support in this matter. Mr. Spears references that under La. Ch. C. art. 1302.5(A)(1), a court of this state that has issued a child support  order retains

continuing and exclusive jurisdiction to modify its child support order.[4] Accordingly, Mr. Spears argues that inasmuch as Louisiana retains exclusive jurisdiction over the child support issue based on Mr. Spears continued residency, "there is no sense in bifurcating the issues—custody and child support—between Louisiana and Texas. However, we find the trial court did not err in failing to consider the jurisdictional impact of potential bifurcation of child custody and child support issues. Any consideration of this issue would be premature.

We first note that there is no present justiciable controversy between Mr. Spears and Ms. McClaine on the issue of child support. The matters stayed relate to custody. A judicial controversy must exist at every stage of the proceedings, including the appellate stage. *See Fidelity Bank v. Dowden*, 2020-0241, p. 6 (La. App. 4 Cir. 10/7/20), 365 So.3d 521, 525. As such, any judicial pronouncement without an existing controversy is an impermissible advisory opinion. *Id.*

Moreover, no judicial determination has been made that Civil District Court would indeed retain exclusive and continuing jurisdiction to modify the present child support order as provided for under La. Ch. C. art. 1302.5(A)1. Additionally, in the event Civil District Court retained jurisdiction over the child support proceeding, no showing or finding has been made or reached that the court would be precluded from exercising its authority transfer a child support dispute to the

---

[4] La. Ch. C. art. 1302.5(A)(1) states, in relevant part, the following.

> A tribunal of this state that has issued a child support order consistent with the law of this state has and shall exercise continuing, exclusive jurisdiction to modify its child support order if the order is the controlling order and: (1) At the time of the  filing of a request for modification, this state is the residence of the obligor, the individual oblige, or the child for whose benefit the support order is issued . . .

20

forum that is the most convenient for all the parties.[5]  Accordingly, this assigned error also lacks merit.

## CONCLUSION

Based on the above and foregoing reasons, the trial court's judgment to deny Mr. Spears' motion to retain jurisdiction and to grant Ms. McClaine's motion to transfer is affirmed.

**AFFIRMED**

---

[5] La. C.C.P. art. 74.2(E)  states '[f]or the convenience of the parties and the witnesses and in the interest of justice, a court upon contradictory motion or upon its own motion after notice and hearing, may transfer the custody or support proceeding to another court where the proceeding may have been brought."