677 So.2d 659 (1996)
Ronald Scott GLOVER, Plaintiff-Appellee,
v.
Rebekah Hudec GLOVER, Defendant-Appellant.
No. 28493-CA.
Court of Appeal of Louisiana, Second Circuit.
June 26, 1996.
Curtis R. Shelton, Shreveport, for Appellant.
David A. Rothell, Mansfield, for Appellee.
Before BROWN, WILLIAMS and GASKINS, JJ.
BROWN, Judge.
This case presents the question of how to determine the income earning potential of a voluntarily unemployed father for the purposes of fixing child support. La.R.S. 9:315.9. The only job offered to Mr. Glover during this period paid $6.85 per hour and the trial court used this figure for his earning potential. Finding Mr. Glover's search for work less than serious, we believe that the wages earned at his last steady work correctly reflects his earning ability and amend the judgment accordingly.

FACTS
Ronald and Rebekah Glover separated in January 1995. In February 1995, Ronald *660 petitioned for divorce pursuant to La.C.C. Art. 102 and moved for a divorce six months later in August 1995. Rebekah answered and reconvened. A trial on all issues, conducted on September 22, 1995, resulted in the granting of a divorce, and the establishment of joint custody over the couple's four year old daughter. Rebekah Glover was named the domiciliary parent.
Mr. Glover was ordered to pay monthly child support of $312. The obligation was determined using the worksheet specified in La.R.S. 9:315.15 and was based, as required, on the combined incomes of the former spouses. The issue raised on appeal, however, concerns the figure used for Mr. Glover's income. Because Mr. Glover was unemployed, the trial judge based Mr. Glover's estimated income potential on a rejected job offer as a meat cutter at $6.85 per hour or $1,187 per month.
Prior to the couple's separation, Mr. Glover had been steadily employed for three and a half years in a Logansport, Louisiana grocery store at an annual salary of $25,850. In January 1995, when the couple separated, Mr. Glover quit his steady job and purchased his father's meat market in Mansfield, Louisiana. Within six months, this venture, named Tough Steak Meat Market, failed and Glover sold the business back to his father. At the time of the trial in September, Glover had completed only six job applications and had received one offer for employment, as a meat cutter earning $6.85 per hour. Glover declined the job offer.
Testimony was also presented regarding Tammy Lafferty who lived with Glover in what had been the matrimonial domicile. Ms. Lafferty is part owner of a chain of Subway sandwich restaurants. Glover and Lafferty opened a joint checking account into which Ms. Lafferty deposited money which Glover used to pay his bills. An income and expense affidavit and Glover's testimony indicated that he received $2,494 per month from Ms. Lafferty for his house note ($512), new truck note ($526), food, clothing, medical, and utility expenses. Glover testified that he and Ms. Lafferty had a verbal agreement that he would reimburse her for these sums once he returned to work; however, there was also testimony that reimbursement would consist of his paying all future expenses once he found work. Glover and Lafferty intended to marry following his divorce.
The trial judge refused to consider Ms. Lafferty's financial contributions in determining Mr. Glover's income potential, noting that they were not then married and that their financial arrangement was subject to change. Ms. Glover now asserts error in the trial court's failure to recognize the expense sharing agreement between Glover and his girlfriend as an adjustment to his income level. In the alternative, Ms. Glover argues that the trial court should have based Mr. Glover's income potential on the $25,850 he earned prior to his ill-fated venture into sole proprietorship rather than on the proposed salary of a position he declined to accept.

DISCUSSION
We find merit in Ms. Glover's alternative position. If a party is voluntarily unemployed or underemployed, his child support obligation shall be calculated based on a determination of his income earning potential. La.R.S. 9:315.9.
Shortly after the couple's separation, Glover left a relatively secure job and a stable income to enter self-employment with no apparent forethought. Glover failed to examine any financial records or inquire about the monthly income and expense figures for the business. Glover merely leaped without looking and failed accordingly.
Thereafter, his "token" job hunting efforts predictably yielded meager results. Glover has applied only for work within the boundaries of his preferred field and has not considered career alternatives. In the weeks immediately preceding the hearing, Glover completed no job applications and appeared to have ended his search for work. Glover has, however, accompanied Ms. Lafferty to Hawaii and in her daily business routine. Although strong inferences indicate that Ronald Glover is employed by Ms. Lafferty, the trial court found that he was voluntarily *661 unemployed.[1] We cannot say that this finding was clearly wrong.
We are left to consider whether the trial court erred in its estimate of Glover's income potential. The court based its estimate on the prevailing wage for a meat cutter's position at a Brookshire's store in Shreveport, Louisiana. The job was offered to Glover; however, he declined the position because of the probability that he would have to move from his home in Mansfield.
Had Glover satisfactorily proved that a diligent and persistent effort uncovered only one job for which he was qualified, the prevailing wage of that job might well be an accurate estimate of his earning potential. However, Glover's limited efforts to find employment provided insufficient evidence that work was not available or was available only at a lower salary. In the absence of such evidence, the wage earned prior to voluntary underemployment or unemployment is the best estimate of an obligated party's potential income. Holdsworth v. Holdsworth, 621 So.2d 71 (La.App. 2d Cir.1993). The trial court was manifestly erroneous in estimating Glover's income potential based on a single job offer found in a limited job search effort. Under these circumstances, the appropriate estimate of Ronald Glover's potential income is $25,850, the salary he earned prior to becoming voluntarily underemployed in his ill-fated meat market venture and subsequently voluntarily unemployed.[2]
The record in the instant case contains sufficient information upon which to make a child support determination under the guidelines in La.R.S. 9:315, et seq. and a remand to the trial court is not necessary. Holdsworth, supra; State v. Flintroy, 599 So.2d 331 (La. App. 2d Cir.1992).
Based on Mr. Glover's income potential, his monthly gross income is $2,154.17 while Ms. Glover's monthly gross income was set at $1,598.56. Their combined monthly gross incomes are thus $3,752.73. Ronald Glover's contribution is 57.40% of the total. The basic child support obligation, as determined from the chart found in La.R.S. 9:315.14, is $554 per month. Adjustments to this monthly figure include $205.46 for net child care costs and $92.50 for health care premiums. The total child support obligation is the sum of the basic obligation and the adjustments or $851.96. Mr. Glover's percentage of this total rounds to $489.

ORDER
The trial court award in favor of Rebekah Glover is amended to increase the monthly child support obligation of Ronald Glover from $312 to $489, retroactive to the date of judicial demand along with judicial interest until paid. The judgment of the trial court, as amended, is affirmed. Costs are assigned to Mr. Glover.
AMENDED AND AFFIRMED.
NOTES
[1] Testimony indicated that Glover did occasionally work getting restaurants ready to open and made rounds with Ms. Lafferty. Glover characterized his labor as the least he could do in light of Ms. Lafferty's generosity.
[2] In fixing the child support obligations of former spouses, the court may consider as income the benefits a party derives from expense sharing or other sources. La.R.S. 9:315(6)(c). It is evident that Mr. Glover was the beneficiary of an advantageous financial arrangement with Ms. Lafferty; however, the evidence presented during the hearing was insufficient to establish the true nature of the financial arrangement. The relevant statutory language makes consideration of expense sharing arrangements discretionary. We cannot conclude that the trial judge abused his discretion in refusing to consider the arrangement between Glover and Lafferty in determining Mr. Glover's income potential.