700 So.2d 533 (1997)
Lance Paul HAVENER, Plaintiff-Appellee,
v.
Deborah Leanne Stumpff HAVENER, Defendant-Appellant.
No. 29785-CA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 1997.
*534 Weems, Wright, Schimpf, Hayter & Carmouche by Carey T. Schimpf, Kenneth P. Haines, Shreveport, for Defendant-Appellant.
Wiener, Weiss & Madison by Katherine Clark Hennessey, Shreveport, for Plaintiff-Appellee.
Before MARVIN, C.J., and STEWART and PEATROSS, JJ.
*535 PEATROSS, Judge.
Defendant Deborah Leanne Stumpff Havener appeals the judgment of the trial court awarding sole custody of her minor child to his father, plaintiff Lance Paul Havener. Mr. Havener appeals the trial court's calculation of the child support obligation and the finding of contempt. We amend the judgment (1) to award joint custody to the parties and to designate the father as the domiciliary parent; (2) to extend the period of Ms. Havener's custody in the summer from 20 days to 30 days; (3) to increase the mother's monthly support obligation to $528; and (4) to vacate Mr. Havener's being held in contempt. We affirm, as amended, the trial court's very detailed judgment, for reasons which follow.

FACTS
Lance Paul Havener and Deborah Leanne Stumpff Havener were married on August 9, 1985. Brett William Havener was born to the parties on August 18, 1990. The parties physically separated on July 31, 1993, and Mr. Havener filed for divorce on September 1, 1993. The physical custody of Brett was shared by the parties through the separation and the divorce on March 31, 1994. In October 1994, trial on a custody rule was begun; however, the parties settled and a judgment continuing joint and shared custody was signed on October 21, 1994.
On September 1, 1995, Mr. Havener filed a Rule for Contempt and Change in Custody. In his petition, he requested that he be named the domiciliary parent of Brett with reasonable visitation granted to Ms. Havener. Mr. Havener also requested incidental relief, including a modification of child support, attorney fees and costs of the proceeding.
Ms. Havener filed an Exception of Prematurity to the rule, which was denied by the trial court on October 12, 1995. The trial court appointed Dr. Bruce McCormick to evaluate the parties, their "significant others"/spouses and Brett.
In November 1995, Mr. Havener filed a Petition to Obtain an Ex Parte Order of Provisional Custody of Brett. After a hearing, on December 1, 1995, the trial court found no reason to discontinue the current visitation schedule and denied Mr. Havener's petition for provisional custody. The parties remained co-domiciliary parents pursuant to the joint custody order.
On December 27, 1995, Ms. Havener filed a Petition for Rule Nisi for Custody, Child Support, Contempt and Attorney Fees, requesting that she be awarded "the sole custody and/or domiciliary control" of Brett.
After trial, on July 19, 1996, the trial judge signed a judgment awarding Mr. Havener the sole custody of Brett and designating specific visitation for Ms. Havener. The trial court also awarded child support and found both parties in contempt.
Assigning three assignments of error, Ms. Havener appeals. Mr. Havener answers, assigning two assignments of error.

DISCUSSION

Scope of Pleadings
Ms. Havener asserts that the trial court erred as a matter of law in rendering a judgment beyond the scope of the relief requested in the petition of Lance Havener. Specifically, she argues that the trial court was without authority to award sole custody to Mr. Havener, when the request in his pleadings was that he be named the domiciliary parent of Brett.
A judgment rendered beyond the pleadings is a nullity. Ussery v. Ussery, 583 So.2d 838 (La.App. 2d Cir.1991); Romero v. State Farm Fire & Casualty Co., 479 So.2d 694 (La.App. 3d Cir.1985). The trial court has discretion to allow enlargement of the pleadings to conform to the evidence. La. C.C.P. art. 1154 .
A timely objection, coupled with the failure to move for an amendment of the pleadings is fatal to an issue not raised by the pleadings. Ussery, supra; Guillory v. Buller, 398 So.2d 43 (La.App. 3d Cir.1981). If the evidence is admissible on the issues properly pleaded, the pleadings are not enlarged by its admission. Pond v. Campbell, 251 La. 921, 207 So.2d 535 (1968); Ussery, supra.
*536 Article 1, Section 2 of the Louisiana Constitution of 1974 provides that no person shall be deprived of life, liberty, or property except by due process of law. The essentials of "due process of law" are notice and an opportunity to be heard and to defend in an orderly proceeding rules and principles established in our system adapted to the nature of the case. Ussery, supra; Littleton v. Littleton, 514 So.2d 248 (La.App. 5th Cir.1987).
La. C.C.P. art. 862 grants the trial court authority to render a final judgment granting the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings. La. C.C.P. art. 862. Nothing in the article, however, is intended to confer jurisdiction on a court to decide a controversy which the parties have not regularly brought before it. Ussery, supra; Patrick v. Patrick, 227 So.2d 162 (La.App. 2d Cir.1969), writ denied, 255 La. 238, 230 So.2d 91 (1970); Littleton, supra.
In the instant case, on the issue of custody, the petition filed by Lance Havener on September 1, 1995, specifically requested the following relief:
* * * * * *
That a rule to show cause issue directing Ms. Havener to appear and show cause why:
* * * * * *
(b) There should not be judgment herein modifying the Judgment dated October 21, 1994 accordingly, and designating Mr. Havener as domiciliary parent of the minor child, Brett William Havener, subject to the reasonable visitation of Ms. Havener.... (emphasis added)
Mr. Havener never amended his pleadings, either in writing or verbally in open court, to reflect that he was seeking sole custody of the child.[1]
Ms. Havener asserts that the relief sought by Mr. Havener was that he be granted domiciliary status and that at no point in his pleadings did he request sole custody of Brett. She contends that no evidence was presented at trial which expanded the pleadings to allow for an award of sole custody to Mr. Havener, but that all evidence admitted at trial was proper in that it related to the issue of whether Mr. Havener should be granted domiciliary status in a joint custody plan. Ms. Havener argues that because no evidence was admitted which expanded the pleadings, she had no reason to object that any evidence was going beyond the scope of the pleadings.
Asserting that she had no notice that sole custody was at issue with regard to the relief sought by Mr. Havener, Ms. Havener maintains that the judgment is beyond the scope of the pleadings and that the award must be vacated. We find merit in this argument.
We note that the trial judge commented at the beginning of the trial that both parties had requested sole custody. Notwithstanding the statement of the trial judge, however, the relief sought by Mr. Havener, as fixed by the pleadings, was joint custody, with him to be designated the domiciliary parent of Brett. At no point did Mr. Havener amend his pleadings in writing or verbally in open court. All evidence presented as to the issue of custody was proper in that it related to whether the award of domiciliary parent status to Mr. Havener or whether the award of sole custody to Ms. Havener was in the best interest of the child. The evidence did not expand the pleadings so as to allow the award of sole custody, rather than primary domiciliary status, to Mr. Havener; hence the trial court exceeded its authority in making such an award. We, therefore, amend the judgment to vacate the award of sole custody to Mr. Havener.

Custody
In her second assignment of error, Ms. Havener asserts that the trial court erred in awarding sole custody to Mr. Havener because the proof submitted was insufficient to *537 overcome the presumption that joint custody is in the best interest of the child. In her third assignment of error, Ms. Havener asserts that the trial court was manifestly erroneous in determining that she should not be the domiciliary parent of Brett pursuant to a joint custody order.
The primary consideration in making a child custody determination is always the best interest of the child. Powell v. Powell, 28,911 (La.App.2d Cir. 12/11/96), 684 So.2d 1084; McKinley v. McKinley, 25,365 (La. App.2d Cir. 1/19/94), 631 So.2d 45; La. C.C. art. 131. When determining the best interest of a child in custody cases, there must be a weighing and balancing of factors favoring or opposing custody in respective competing parents on the basis of the evidence presented in each particular case. Powell, supra; McKinley, supra.
When a trial court has made a considered decree of permanent custody, the petitioning party bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody, or of proving by clear and convincing evidence that any harm likely to be caused by a change of environment is substantially outweighed by the advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193 (La. 1986); Evans v. Terrell, 27,615 (La.App.2d Cir. 12/6/95), 665 So.2d 648. A considered decree is one for which evidence as to parental fitness to exercise custody is received by the court. Powell, supra; Oglesby v. Oglesby, 25,974 (La.App.2d Cir. 8/17/94), 641 So.2d 1027.
If no considered decree has been rendered, the "heavy burden" rule does not apply, but the party seeking to modify the custody arrangement must prove a change in circumstances and that the new custody arrangement would be in the best interest of the child. Barnes v. Cason, 25,808 (La. App.2d Cir. 5/4/94), 637 So.2d 607, writ denied, 94-1325 (La.9/2/94), 643 So.2d 149; Odom v. Odom, 606 So.2d 862 (La.App. 2d Cir.1992).
A trial court's determination of child custody is entitled to great weight and will not be disturbed on appeal absent a clear abuse of discretion. Barnes, supra; Powell, supra. An appellate court should be reluctant to interfere with custody plans ordered by the trial court in the exercise of its discretion. Powell, supra; McKinley, supra.
In the instant case, joint custody was originally awarded to the parties by the October 21, 1994 judgment in which the parties were designated as co-domiciliary parents. This award was made pursuant to "agreement of the parties." Since the original custody decree was by stipulation of the parties, it is not a "considered" decree. Barnes, supra. In evaluating whether the joint custody decree of October 21, 1994, should be modified in this case, the standard is whether Mr. Havener proved a change of circumstances materially affecting the welfare of the child and that the modification sought is in the best interest of the child. Barnes, supra; Cooper v. Cooper, 579 So.2d 1159 (La.App. 2d Cir.1991).
The trial judge, in his oral reasons for judgment, found that both parents had positive and negative attributes and that they both cared deeply for Brett. Stating that he would preferred to have awarded joint custody, the trial judge made an award of sole custody primarily because the communication barrier between the parties was so strong. In an attempt to further alleviate the undesirable effect on Brett of the constant disagreement of the parties, the trial court selected a pediatrician, therapist and school for Brett and further restricted interaction between the parties.
Viewing the evidence and testimony in the record as a whole, it is clear that both parties love Brett and desire to provide a nurturing home for him. The testimony of the experts clearly reflects the importance of both parents having an active role in Brett's upbringing.
While the trial court was correctly concerned about the difficulty in communication experienced by the parties, we believe that the trial court's detailed judgment effectively addressed this issue by making decisions on major issues and by further restricting interaction between the parties. Finding that the *538 trial court judgment sufficiently resolves these communication problems, we amend to award joint custody, designating the father as the primary domiciliary parent.
In order to allow Ms. Havener significant contact with Brett, all provisions of the custody implementation schedule ordered by the trial court judgment are to remain in effect, with one amendment. We add an additional ten days to Ms. Havener's summer custody of Brett, giving her a total of thirty days custody during summer vacation. These additional ten days are to be exercised as an extension of the summer custodial period granted in the trial court judgment.[2]

Contempt
In his cross appeal, Mr. Havener asserts that the trial court erred in finding him in contempt. Mr. Havener argues that the trial court failed to recite the facts on which the finding of contempt is based; therefore, a reversal is required.
La. C.C.P. 225(B) provides:
If the person charged with contempt is found guilty the court shall render an order reciting the facts constituting the contempt, adjudging the person charged with contempt guilty thereof, and specifying the punishment imposed.
The provisions of C.C.P. art. 225(B) are mandatory and must be strictly construed. Brown v. Brown, 493 So.2d 671 (La.App. 2d Cir.1986). The failure of a trial court to recite facts constituting contempt mandates a reversal of a judgment of contempt. Brown, supra.
In the instant case, the trial court found both parties in contempt.[3] In his reasons for judgment, the trial judge stated to the parties:
Both of you want me to think the other one is contemptuous and you have done everything to facilitate what is good. I'm sorry. The Court does not buy that. I find you both in contempt of court, period .... [t]he lack of communications have caused a problem in this case to be so great that I cannot with a clear conscience put either one of you in jail. I think you are both wrong.
While we cannot say the trial judge was incorrect in finding that the "lack of communications" between the parties caused problems, we do not believe that this statement alone is sufficient to meet the recitation of facts required for a finding of contempt. The contempt statutes must be strictly construed. Brown, supra. Accordingly, we amend the trial court judgment to vacate the finding contempt on the part of Mr. Havener.[4]

Child Support
Mr. Havener also asserts that the trial court erred in deviating from the child support guidelines. Specifically, he argues the trial court was in error to base the calculation of Ms. Havener's income upon her testimony that she had interviewed for a position paying $14 per hour, rather than to set her child support obligation at the amount indicated in her pretrial child support obligation worksheet. Mr. Havener further contends that the trial court failed to give reasons for the deviation and to include a finding as to what the amount of support would have been under a mechanical application of the guidelines. We find merit in his argument.
LSA-R.S. 9:315.1(B) provides:
B. The court may deviate from the guidelines set forth in this Part if their application would not be in the best interest *539 of the child or would be inequitable to the parties. The court shall give specific oral or written reasons for the deviation, including a finding as to the amount of support that would have been required under a mechanical application of the guidelines and the particular facts and circumstances that warranted a deviation from the guidelines. The reasons shall be made part of the record of the proceedings.
The child support guidelines of LSA-R.S. 9:315 et seq. establish a rebuttable presumption of the amount of child support that is proper. LSA-R.S. 9:315.1(A). The court may deviate from the guidelines if their application would not be in the best interest of the child or would be inequitable to the parties. LSAR.S. 9:315.1(B). The trial court is vested with much discretion in fixing support, and its reasonable determinations will not be disturbed unless there is a clear abuse of discretion. Gould v. Gould, 28,996 (La. App.2d Cir. 1/24/97), 687 So.2d 685; Settle v. Settle, 25,643 (La.App.2d Cir. 3/30/94), 635 So.2d 456, writ denied 94-1340 (La.9/16/94), 642 So.2d 194. Reasons for deviation must be stated in the record, and they may include, inter alia, "any other consideration which would make application of the guidelines not in the best interest of the child or children or inequitable to the parties." LSA-R.S. 9:315.1(C)(7).
If a party is voluntarily unemployed or underemployed, child support must be based on a determination of his or her income earning potential, unless the party is physically or mentally incapacitated or is caring for a child of the parties under the age of five years. R.S. 9:315.9. Voluntary underemployment is a question of good faith on the obligor spouse. Gould, supra.; Hutto v. Kneipp, 627 So.2d 802 (La.App. 2d Cir.1993). The trial court, however, has wide discretion in determining the credibility of the witness; whether the obligor spouse is in good faith in ending or reducing his income is a factual determination which will not be disturbed absent an abuse of discretion. Gould, supra; McHale v. McHale, 612 So.2d 969 (La.App. 2d Cir.1993).
The district court's conclusions of fact regarding financial matters underlying an award of child support will not be disturbed in the absence of manifest error. Timmons v. Timmons, 605 So.2d 1162 (La. App. 2d Cir.1992); Miller v. Miller, 475 So.2d 40 (La.App. 2d Cir.1985).
At the time of trial, Ms. Havener was not working at Schumpert Medical Center, her former place of employment.[5] Ms. Havener testified she was on a personal leave of absence, which had been extended at least twice, for periods of two months and a three months, respectively. She further testified that she had interviewed with Willis-Knighton for a position which paid $14 per hour.
In the pretrial child support obligation worksheet filed by Ms. Havener, her child support obligation was determined to be $752.48 per month, based upon her monthly income of $4,861.25 per month. Rather than using this $4,861.25 figure as Ms. Havener's monthly income, the trial court based its child support calculations on a monthly income figure of $2,426, which was determined by calculating Ms. Havener's income at $14 an hour for a 40-hour work week. The trial court also ordered her to pay, as child support, 20% of her earnings over $2426. The trial judge cited no reasons for deviating from the child support guidelines in his selection of the lower figure for Ms. Havener's income.
Ms. Havener testified that she was voluntarily unemployed. Her potential income, therefore, should be considered in calculating her child support obligation. LSA-R.S. 9:315; LSA-R.S. 9:315.9. Under these circumstances, we do not consider Ms. Havener's testimony as to the wage paid for the position at Willis-Knighton to be sufficient evidence upon which to base an accurate estimate of her earning potential. Ms. Havener's limited effort to find employment provided insufficient evidence that work was *540 available at only the lower salary. In the absence of such evidence, the wage earned prior to voluntary underemployment or unemployment is the best estimate of an obligated party's potential income. Glover v. Glover, 28,493 (La.App.2d Cir. 6/26/96), 677 So.2d 659; Holdsworth v. Holdsworth, 621 So.2d 71 (La.App. 2d Cir.1993). Ms. Havener's potential income is, therefore, her wage earned at Schumpert, which is reflected in her pretrial child support obligation worksheet to be $4,861.25.
The record in the instant case contains sufficient information upon which to make a child support determination under the guidelines in LSA-R.S. 9:315, et seq. and a remand to the trial court is not necessary. Glover, supra; Holdsworth, supra.
Based upon Ms. Havener's income potential, her monthly gross income is $4,861.25. Mr. Havener's monthly gross income is set at $5,259.65. Their combined monthly gross incomes are thus $10,120.90. Ms. Havener's contribution is 48% of the total. The basic child support obligation is determined to be $1,100 per month.
In regard to the award of net child care costs and cost of health insurance premiums, the trial court deviated from the child support guidelines and cited his reason for the deviation as the income Ms. Scarlett Havener provides to the household of Mr. Havener. It was the ruling of the trial court, for the reason cited for the deviation, that Mr. Havener pay 80% of net child care costs and Ms. Havener pay 20% of net child care costs. The trial court also ruled that Mr. Havener maintain major medical insurance on Brett and that Ms. Havener pay 20% of uncovered medical expenses, including the deductible. We affirm this aspect of the ruling of the trial court.
The total child support obligation is $1,100, the sum of the basic obligation and the adjustments. Ms. Havener's percentage of this total is $528, which is set as the amount of her monthly child support obligation.[6]

CONCLUSION
For the reasons stated above, the trial court judgment is amended to award joint custody to the parties with Mr. Havener designated as the primary domiciliary parent.
All provisions of the custody implementation plan of the trial court judgment, including the choice of Brett's physician, therapist and school, are to remain in effect, with the amendment of ten additional days of custody for Ms. Havener during summer vacation, to be exercised as an extension of the twenty days of summer visitation awarded in the trial court judgment.
The trial court judgment is amended to vacate the finding of contempt on the part of Mr. Havener.
The trial court judgment setting Ms. Havener's child support obligation is amended to increase her monthly child support obligation to $528, effective July 15, 1996. Ms. Havener shall pay this amount of child support to Mr. Havener, in equal installments of $264 each on the first and fifteenth of the month.
The provision of the trial court judgment requiring Mr. Havener to maintain major medical insurance on the child and Ms. Havener to pay 20% of uncovered medical expenses, including the deductible is affirmed. We also affirm the provision of the trial court judgment requiring Mr. Havener to pay 80% and Ms. Havener to pay 20% of the cost of after-school care at Shreve Island Elementary School.
Additionally, we affirm the provisions of the trial court regarding the counseling of Brett and the parties, the exchange of Brett, the telephone communications and the parties' attendance at functions. We affirm, also, the trial court judgment provisions concerning parental access to information, visitation by the opposite sex, parental notification in case of emergency and Brett's school attendance. Likewise, we affirm the trial court's assessment of trial court costs.
Costs of this appeal are to be divided equally between the parties.
*541 JUDGMENT AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] Mr. Havener argues in his brief that he sought sole custody of the child in his pleadings. The referenced pleading, however, is that of the November 15, 1995 petition for sole provisional custody. After a hearing, this request for sole provisional custody was denied by the trial court on December 1, 1995. At no point in the petition filed in the instant action did Mr. Havener specifically request sole custody.
[2] While a 50/50 division of custodial care is not required under a joint custody plan, this court has required that the non-domiciliary parent enjoy substantial time with the child. See Foy v. Foy, 505 So.2d 850 (La.App. 2d Cir.1987) and Carroway v. Carroway, 441 So.2d 494 (La.App. 2d Cir.1983). The visitation designated by the trial court (with the instructional intersession days properly composing part of the intersession "vacation") and the additional ten days awarded by this panel give Ms. Havener significant contact with Brett.
[3] The trial court imposed no sentence on the finding of contempt, deferring sentencing until a later date.
[4] The same reasoning would apply to the finding that Ms. Havener was in contempt. Ms. Havener, however, did not appeal the trial court's finding of contempt on her part, therefore, that issue is not before us.
[5] Since Brett was over five years old at the time of trial, Ms. Havener does not qualify for the statutory deviation for voluntary unemployment.
[6] As Ms. Havener's child support obligation is $528 per month, the provision of the trial court judgment ordering payment of 20% of her earnings over $2,426 is reversed.