Judgment rendered August 14, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 52,727-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ROBERT JACKSON DAVIDSON                    Plaintiffs-Appellees
AND LINDA WILBURN
DAVIDSON

versus

ALLAN NEIL CASTILLO AND                    Defendants-Appellants
CASTILLO INVESTIGATION &
RESEARCH, INC.

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 78487

Honorable Charles B. Adams, Judge

* * * * *

LAW OFFICE OF BRYCE J. DENNY, LLC          Counsel for Appellant,
By: Bryce J. Denny                         Allan Neil Castillo

AYRES, SHELTON, WILLIAMS,                  Counsel for Appellees
BENSON & PAINE, LLC
By: Lee H. Ayres
    Ryan P. Telep

* * * * *

Before MOORE, GARRETT, and STONE, JJ.

**GARRETT, J.**

This case arises from a dispute between the plaintiffs, Robert and Linda Davidson, and the defendant, Allan Neil Castillo, over dissolution of a business they formerly operated together. Castillo appeals from a trial court judgment finding him to be in constructive contempt of court for a second time and imposing penalties upon him. For the following reasons, we affirm the trial court judgment.

## FACTS

In December 2004, Robert and Linda Davidson formed a business with Castillo known as Lagniappe and Castillo Research and Investigations, LLC ("L&C"). The company performed background checks. The Davidsons owned 50% of the business and Castillo owned 50%. Disagreements developed as to how to run the business and the frequency of distributions. By May 2017, the parties were not able to work together. Castillo formed Castillo Investigations and Research, Inc. ("CIR"). The Davidsons alleged that Castillo began diverting business to his company and took money owed to L&C. On June 2, 2017, the Davidsons filed a petition seeking dissolution of L&C, partition of immovable property, and damages. Castillo and CIR were named as defendants. The Davidsons sought appointment of a liquidator and suggested that the company's accountant, Deborah D. Dees, be appointed by the court to perform this function.

After a hearing, the parties agreed to an order of dissolution and to the appointment of Dees as liquidator, which was signed and filed on July 6, 2017. Regarding the authority given to Dees, the order stated, in part:

> IT IS FURTHER ORDERED, ADJUDGED, AND
> DECREED that, as liquidator, Deborah D. Dees, CPA, has all
> authority as permitted pursuant to La. R.S. 12:1335 et seq. and

any other applicable law to act on behalf of L&C, including, but not limited to the following:

a) To request and require any members of L&C to return any and all assets of L&C to her possession and control, including but not limited to assets such as financial records, check books, bank records, deposit slips, bank statements, invoices, accounts receivable, accounts payable, general ledgers, accounting journals, customer lists, customer files, credit card statements, background search requests, electronic accounting records, electronic accounting software (e.g. Quickbooks), invoices, contracts, furniture, fixtures, and any other assets of any kind;

. . . .

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all plaintiffs and defendants in this litigation shall fully cooperate with all reasonable requests of the liquidator, Deborah D. Dees. This obligation includes but is not limited to the obligation to provide her any and all assets of L&C within five (5) business days of her request. If any plaintiff or defendant fails to cooperate with Deborah D. Dees, then she shall report such failure to this Honorable Court, which will consider any and all appropriate sanctions and remedies to be imposed against the non-cooperating party.

On August 4, 2017, the Davidsons filed their first motion for contempt against Castillo, claiming that he failed to comply with the order to turn over records and equipment, he used software designed for L&C, he established a new business with a misleading name, and his attorney was not cooperative in complying with the order of dissolution. A hearing was held in September 2017, and Castillo was found to be in contempt of court. He was directed to provide the liquidator with documents and information necessary to establish the accounts receivable of L&C, and to deliver any incoming checks for L&C to the liquidator. He was granted a purge period, until September 19, 2017, to provide the materials requested by the liquidator. After conferences with the court and the parties, in October 2017, the Davidsons filed a motion to reopen the evidence on the contempt

2

motion and to reset the sentencing hearing. They alleged that, after Castillo turned over records, it was determined that he was in possession of more than $11,000 that belonged to L&C. The trial court granted the motion.

An additional hearing on the motion for contempt was held on November 13, 2017. The trial court determined that Castillo intentionally delayed the delivery of L&C assets to the liquidator in violation of the dissolution order and his behavior was contemptuous. The court ordered Castillo to pay a fine of $500 and be imprisoned for ten days. The term of imprisonment was suspended, and Castillo was ordered to pay "all of the costs of the liquidator, when that amount is finally determined, and to pay the attorney's fees and court costs of the plaintiffs for the pursuit of these contempts, totaling $10,708.00 within 72 hours or report for his 10 days' imprisonment." Castillo did not appeal from this contempt adjudication.

On November 13, 2017, Dees billed $24,070.71 for her services up to that date.

On March 16, 2018, the Davidsons filed a second motion for contempt, claiming that Castillo failed to timely turn over bank statements; information from his accounting firm; access to his accounting software, FreshBooks; and access to his billing system. They claimed that Castillo was still in possession of funds owed to L&C, and that Castillo failed to pay the liquidator's fee.

On April 23, 2018, the trial court signed an order directing Castillo to pay the liquidator for fees and expenses from June 29 through November 13, 2017, in the amount of $24,070.71, on or before April 27, 2018. Castillo's accountant, Anthony Juneau, Jr., was ordered to produce the general ledger, monthly bank reconciliations from June 1 through December 31, 2017,

monthly profit and loss statements from June 1 through December 31, 2017, and monthly balance sheets from June 1 through December 31, 2017, for CIR. The order specified that, if Juneau did not produce the records by April 27, 2018, a subpoena would be issued requiring his appearance and production of the documents at the hearing on the second motion for contempt.

On April 30, 2018, Dees billed an additional $13,206 for her services.

A hearing on the second motion for contempt was held on June 21, 2018. The Davidsons' lawyer argued that the motion was based upon Castillo's flagrant disregard of four things: (1) the order of dissolution entered in July 2017; (2) the instructions on the record at the first contempt hearing; (3) the order following the hearing in November 2017, when the evidence was reopened on the first motion for contempt; and (4) the order issued by the trial court on April 23, 2018, requiring Castillo to pay the liquidator's fees and to produce specified documents from his accountant, Juneau. The Davidsons' attorney noted that not all of the requested information had been turned over to the liquidator and that Castillo paid the liquidator's first bill in a piecemeal fashion, making the last payment on June 8, 2018. The Davidsons asked the trial court to hold Castillo in contempt a second time, withdraw the suspension of sentence, order him to serve ten days in jail, and order him to pay the liquidator's second invoice and any subsequent invoices presented within a reasonable time.

At the hearing, Juneau testified. He stated that Castillo never showed him the dissolution order appointing the liquidator and specifying that records requested by the liquidator were to be produced within five days. Castillo never conveyed to him any sense of urgency in producing any of the

4

records for CIR. In February 2018, Juneau was made aware of the request for the general ledger, bank reconciliations, monthly profit and loss statements, and balance sheets. Juneau said that Castillo had the bank statements and Juneau did not have general ledger information. He stated that preparation of the 2017 records was delayed because amounts related to Castillo's gambling required the filing of an amended tax return for 2016. Juneau said that accurate figures for 2017 could not be determined until the problems with 2016 were resolved. Juneau testified that monthly profit and loss statements or balance sheets could not be produced because they were never prepared for CIR. Juneau eventually received a subpoena for the financial information and timely produced what records he had. Juneau said that, from June through December 2017, Castillo took draws totaling $131,374.43 from CIR.

Dees, the liquidator, testified regarding the difficulties she experienced in getting information from Castillo to dissolve L&C. She was concerned that Castillo was diverting funds from L&C to CIR. Several instances were discovered where that happened. In December 2017, Castillo cut off her access to CIR's accounting software, FreshBooks. Eventually, her access was restored. She stated that Castillo never produced some of the financial information requested. The information was received only after a subpoena was issued to Castillo's accountant. Dees also outlined the delays in getting payment from Castillo on the initial invoice for her services. At first, Castillo's lawyer said she would get a check. Then she was told that she would only be paid after the dissolution was complete. She then received a series of partial payments. The second bill, for $13,206, was

submitted two months before the hearing and Castillo had not paid anything on that.

Castillo testified that he had several conversations with Juneau about getting materials together for the liquidator. He thought that Juneau was supposed to produce everything he had to the trial court. Castillo said that when Dees was cut off from access to FreshBooks for a time, that was done by a technology consultant, Jack Haines. Castillo claimed he had no control over that issue and Dees had to work the problem out with Haines.

Castillo was asked about his ability to pay the liquidator. He stated his income for 2017 was $198,000, and that he takes draws of $9,000 to $11,000 per month from CIR. However, he has to pay for his parents' house, his own expenses, and child support. He also said he thought he did not have to pay the liquidator's bill until after all the work to dissolve L&C was completed. Castillo admitted that he did not pay the liquidator's initial bill of $24,070.71 within five days of receipt of the invoice. He claimed that he did not have the money and that he took out a loan for $10,000 to pay half of the amount due.

After examination by his attorney and cross-examination by the Davidsons' attorney, the trial court stated that the door had been opened regarding Castillo's ability to pay Dees and the court needed to ask some questions. After questions regarding Castillo's business expenses, the following colloquy occurred:

> THE COURT: Now what about we're still – Ms. Dees still has a bill of thirteen two oh six and been pending since April 30th. Are you gonna try to tell me that you don't think you owe that until I, you know, come to the threshold of holding you in contempt?

6

THE WITNESS:  No, sir.  But I did not know and I've asked [my lawyer] too when did I need to pay it.  Because I would pay but I don't know if it's due right now.  I mean –

THE COURT:  You don't know if it's due right now?

. . . .

THE WITNESS:  Now paying her, I don't have an issue with it.

THE COURT:  Do you understand, Mr. Castillo, that the costs of the liquidator is a lot more than it had to be?

THE WITNESS:  Yes, sir.

THE COURT:  And why do you think that is?

THE WITNESS:  I'm trying to give everything I can, Judge.

THE COURT:  Mr. Castillo, it's because of your behavior.

THE WITNESS:  Well I mean I've tried – and they're mixing all of this up.  You know, it's –

THE COURT:  I've already found you in contempt once.

THE WITNESS:  Yes, sir.

THE COURT:  I suspended it.

THE WITNESS:  Yes, sir.

THE COURT:  Gave you a purge opportunity and you ultimately, after having had to come back to the court for an additional couple of times in the contempt, you final[ly] cured it.

THE WITNESS:  Yes, sir.

THE COURT:  And here we are.  And you're still not paying.

THE WITNESS:  I mean I'll pay it.  It'll be paid.

THE COURT:  Oh it's [sic] be paid one way or another but after you serve your ten days in jail, Mr. Castillo.  The previously suspended sentence of ten days of contempt is hereby imposed upon you.  You're in contempt.  You're not doing what you're suppose [sic] to be doing.

MR. DENNY [counsel for Castillo]:  Your honor, I was just going to say, I wasn't quite through but apparently –

7

THE COURT: Mr. Denny, what time do you have?

MR. DENNY: 6:06.

THE COURT: 6:06 p.m. We can go over this and we've had pretrial conferences over it, we've gone on about it but I've heard enough. And Mr. Castillo is in contempt of court. He failed to comply with the Court's orders and I have worked with him as much as I could. You're remanded to the custody of the Sheriff.

After discussing with Castillo's lawyer about considering a bond or a purge amount, the trial court expressed concern over the fact that the liquidator had not been paid. The trial court said:

[T]here still is a thirteen thousand two hundred and six dollar liquidator invoice. The liquidator was appointed by the Court and at the direction of the Court and the Court can't appoint people if the Court can't make provisions for payment of those services.

After ordering that the numerous exhibits referenced during the testimony be admitted into evidence, the trial court had the following conversation with Castillo's attorney:

THE COURT: Did you have anything else you intended to submit?

MR. DENNY: No.

THE COURT: That I have precluded you from submitting?

MR. DENNY: Well I was actually going to, it may not make a big difference to the Court, but I mean he did give me his personal accounts and I'm the one that told him not – I didn't produce them. I had them because I didn't think they were responsive.

THE COURT: I'm not of the opinion that the personal account information or the lack of it being disclosed. I'm not considering that at all to be an element of contempt.

MR. DENNY: Okay.

Although Castillo spent the night of June 21, 2018, in jail, the next day he petitioned the trial court for a stay of the sentence on the contempt

8

ruling pending review by this court. The trial court granted the stay.

Castillo originally intended to seek review of the trial court ruling by filing a writ application with this court. Castillo's counsel later determined that an appeal would be appropriate in this matter. On appeal, Castillo presents several assignments of error.

## PREVENTING THE DEFENDANT FROM PRESENTING HIS CASE

Castillo argues that the trial court erred in rendering judgment before the defendant was finished presenting his side of the case. This argument is without merit.

### Legal Principles

La. C.C.P. art. 191 states:

A court possesses inherently all of the power necessary for the exercise of its jurisdiction even though not granted expressly by law.

La. C.C.P. art. 1631(A) provides:

The court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done.

The trial court has great discretion in directing the manner in which proceedings are conducted, and only upon a showing of a gross abuse of that discretion will the appellate court intervene. *Succession of Houston*, 52,181 (La. App. 2 Cir. 8/15/18), 253 So. 3d 836, *writ denied*, 2019-0458 (La. 5/20/19); *Teague v. Teague*, 44,005 (La. App. 2 Cir. 11/25/08), 999 So. 2d 86.

La. C.E. art. 611 states, in pertinent part:

A. Control by court. Except as provided by this Article and Code of Criminal Procedure Article 773, the parties to a proceeding have the primary responsibility of presenting the

9

evidence and examining the witnesses. The court, however, shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to:

(1) Make the interrogation and presentation effective for the ascertainment of the truth;

(2) Avoid needless consumption of time; and

(3) Protect witnesses from harassment or undue embarrassment.

The relevant portion of La. C.E. art. 103 states:

A. Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) Ruling admitting evidence. When the ruling is one admitting evidence, a timely objection or motion to admonish the jury to limit or disregard appears of record, stating the specific ground of objection; or

(2) Ruling excluding evidence. When the ruling is one excluding evidence, the substance of the evidence was made known to the court by counsel.

**Discussion**

Castillo contends that the cessation of the proceedings before he finished presenting his side of the case constitutes reversible error. Castillo's attorney asserts that he was denied the opportunity to conduct redirect examination of his client after the trial court's questioning. The attorney also argues that he was considering whether to re-call Dees in order to explore whether she was biased. According to the attorney, once the court ruled, finding Castillo in contempt, he was "on the spot" and did not have time to determine whether to re-call Dees. Castillo contends that Dees' testimony showed that she was becoming an advocate for the Davidsons and "counsel should not have been deprived of the opportunity to explore this issue at the hearing." Castillo also considered asking Dees to separate her charges for the contempt work from her charges for the liquidation work.

10

We first note that Castillo never raised an objection to the trial court's action in halting the proceedings and finding him in contempt of court. Instead, although Castillo's lawyer indicated he was not finished, he did not object and did not tell the trial court that he intended to question his client further or re-call Dees. Rather, when asked if he had anything else to offer, Castillo indicated that he did not. Without a valid contemporaneous objection to the trial court's action, arguably, this assignment of error is not properly before us.

However, even considering the merits, Castillo has failed to show that the trial court abused its discretion in its conduct of the proceedings. Castillo's attorney did not inform the court that he had additional questions to pose to his client. Castillo's lawyer also does not argue what the questioning would have included or how he was prejudiced by the termination of the proceedings without additional questioning. The argument by Castillo's attorney that he was prevented from conducting a redirect examination of his client is not supported by the record.

Regarding the decision as to whether to re-call Dees, Castillo does not contend that he actually intended to re-call the witness and was deprived of the opportunity to question her further. He merely urges on appeal that he was contemplating re-calling her. The defense makes a hollow argument that it was deprived of the opportunity to show that Dees was biased. Castillo contends that the allegation of bias on the part of Dees was based upon her testimony that she thought Castillo still possessed funds belonging to L&C, but she could not prove that. He claims this statement shows that Dees was acting as an advocate for the Davidsons. The record shows that Castillo consented to the appointment of Dees as liquidator in this matter.

11

Further, the testimony by Dees, that she thought that Castillo had additional funds belonging to L&C, was brought out on questioning by Castillo's lawyer. In discussing how customers of L&C were slow in paying, Dees was asked by Castillo's counsel, "And have you decided at this point whether you've collected as much as you're gonna collect or do you know at this point?" Dees said, "I've come to a conclusion, yes sir." When asked what the conclusion was, Dees said, "Conclusion is that I still think that there's some money probably available at Castillo but I can't prove it. And I think I should move on." Dees said she could not prove that money was available because she did not have all the information to prove it, such as the backs of deposit slips for June and July. Castillo's attorney did not pursue any questioning about alleged bias at that point and continued questioning the witness about financial records and amounts paid by customers of L&C. At the end of his questioning, Castillo's lawyer asked for a moment, which was granted. The lawyer then said that he had no further questions.

The record clearly shows that Castillo was not deprived of the opportunity to cross-examine Dees on the issue of bias or any other issue. Dees was called as a witness for the Davidsons. After being questioned by their counsel, Dees was thoroughly cross-examined by Castillo's attorney. The trial court then asked Dees some questions and Castillo's attorney was allowed to ask additional questions. Castillo was afforded ample opportunity to question this witness regarding any bias. He also had the opportunity to ask her to separate the charges for her contempt work and the liquidation work, but he failed to do so. Castillo simply was not deprived of the right to cross-examine Dees. Therefore, the trial court's action in terminating the proceedings did not infringe on Castillo's rights. The facts

12

of this case are distinguishable from those in which a party is entirely precluded from cross-examining a witness. *See and compare Smith v. Scott*, 577 So. 2d 809 (La. App. 2 Cir. 1991); *Labadot v. Labadot*, 328 So. 2d 747 (La. App. 4 Cir. 1976).

As stated above, a trial court has the power to conduct the proceedings with dignity and in an orderly and expeditious manner. The trial court may also exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to avoid the needless consumption of time. Based upon our review of the record, we do not find that the trial court's actions in the conduct of this matter constituted a gross abuse of the trial court's great discretion in directing the manner in which the proceedings were conducted.

### FACTUAL BASIS FOR CONTEMPT

Castillo urges that the trial court erred in rendering a judgment of contempt without specifying the factual basis for that determination, in a judgment or in open court, as required by La. C.C.P. art. 225(B). This argument is without merit.

### Legal Principles

A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority. Contempts of court are of two kinds, direct and constructive. La. C.C.P. art. 221.

La. C.C.P. art. 224 provides, in pertinent part:

A constructive contempt of court is any contempt other than a direct one.

Any of the following acts constitutes a constructive contempt of court:

13

. . . .

(2) Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court;

. . . . .

(10) Any other act or omission punishable by law as a contempt of court, or intended to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority, and which is not a direct contempt.

La. C.C.P. art. 225(B) provides:

If the person charged with contempt is found guilty the court shall render an order reciting the facts constituting the contempt, adjudging the person charged with contempt guilty thereof, and specifying the punishment imposed.

The provisions of C.C.P. art. 225(B) are mandatory and must be strictly construed. *Havener v. Havener*, 29,785 (La. App. 2 Cir. 8/20/97), 700 So. 2d 533; *Brown v. Brown*, 493 So. 2d 671 (La. App. 2 Cir. 1986). The failure of a trial court to recite facts constituting contempt mandates a reversal of a judgment of contempt. *Havener v. Havener*, *supra*. However, even when the district court fails to recite the facts constituting contempt in a written order, the jurisprudence has recognized that this requirement is satisfied if such facts are recited by the district court in open court. *In re Succession of LeBouef*, 2013-0209 (La. App. 1 Cir. 9/9/14), 153 So. 3d 527; *Garrett v. Andrews*, 1999-1929 (La. App. 1 Cir. 9/22/00), 767 So. 2d 941.

## DISCUSSION

The hearing in this case concerned a motion for contempt alleging that Castillo failed to comply with the trial court's July 2017 order of dissolution; the instructions given in the first contempt hearing; the order entered by the trial court after the November 2017 hearing, set forth above; and the trial court's order issued on April 23, 2018, ordering Castillo to pay $24,070.71

14

in liquidator's fees, to produce the general ledger, bank account reconciliations, monthly profit and loss statements, and monthly balance sheets. The testimony by Dees showed that Castillo did not promptly pay the liquidator's fees or produce the requested financial information. Juneau testified that he never saw the trial court order and Castillo did not convey to him a sense of urgency in producing the financial records ordered by the trial court. The court also noted that Castillo still owed $13,206 in new liquidator's fees that were billed on April 30, 2018. Castillo had previously been ordered to pay the liquidator's fees and the trial court found that he had failed to do so. The court pointed out that the liquidator's fees were higher than they had to be because of Castillo's behavior. The record was replete with instances in which Castillo failed to cooperate with the liquidator and provide financial information as he had been ordered to do by the trial court.

The written judgment of contempt, signed on July 3, 2018, ordered Castillo to pay the liquidator's fees within five business days of the judgment and to pay all future invoices within five business days of receipt of future invoices. Castillo was ordered to provide Dees, within five business days of the judgment, copies of all personal bank account statements from June 1, 2017, through December 31, 2017, where those accounts were used to pay the expenses of CIR, or revenue and funds of CIR were deposited, along with complete copies of all cancelled checks and deposit slips on any bank account utilized or maintained by CIR, as well as any additional documents that CIR requested from the bank regarding its bank accounts from June 1, 2017, through December 31, 2017.

The oral reasons and the written judgment show that Castillo was found in contempt for failure to promptly pay liquidator's fees and produce

15

the requested financial records as previously ordered by the trial court. Therefore, this record establishes a factual basis for the judgment of contempt.[1]

## COSTS OF THE LIQUIDATOR

Castillo argues that the trial court erred in rendering a judgment holding him liable for all costs, including all future costs, of the liquidator. He urges that this requirement is overbroad and inappropriate. He claims the proper remedy would be for the liquidator to separate her fees relating to the contempt from the liquidation and he should only have to pay the fees relating to the contempt. This argument is without merit.

### Legal Principles

Regarding the penalties for contempt of court, La. R.S. 13:4611(1)(d)(i) provides:

Except as otherwise provided for by law:

(1) The supreme court, the courts of appeal, the district courts, family courts, juvenile courts and the city courts may punish a person adjudged guilty of a contempt of court therein, as follows:

(d)(i) For any other contempt of court, including disobeying an order for the payment of child support or spousal support or an order for the right of custody or visitation, by a fine of not more than five hundred dollars, or imprisonment for not more than three months, or both.

A proceeding for contempt in refusing to obey the trial court's orders is not designed for the benefit of the litigant, though infliction of a punishment may inure to the benefit of the mover in the rule. The object of the proceeding is to vindicate the dignity of the court. *Martin v. Martin*, 37,958

---

[1] This case is distinguishable from instances in which the reasons for a finding of contempt cannot be ascertained from the record. *See and compare Havener v. Havener*, *supra*; *Brown v. Brown*, *supra*; *Garrett v. Andrews*, *supra*; *Gautreau v. Gautreau*, 97-612 (La. App. 3 Cir. 10/8/97), 702 So. 2d 851.

(La. App. 2 Cir. 12/10/03), 862 So. 2d 1081, *writ not cons.*, 2004-0481 (La. 3/12/04), 869 So. 2d 807.

## Discussion

Castillo urges that, by ordering him to pay all the liquidator's fees in this matter, the trial court imposed upon him a fine for contempt of court that exceeds the maximum $500 fine provided in La. R.S. 13:4611. Castillo notes that the original order of contempt ordered him to pay "all of the costs of the liquidator when that amount is finally determined." However, he maintains that the first motion for contempt prayed for the court to order Castillo to "be solely responsible for all of the liquidator's fees and expenses incurred as a result of his failure to comply with this Court's *Order* [of dissolution] dated July 6, 2017." Castillo urges that the first motion for contempt did not request that he pay all the liquidator's fees, regardless of whether the fees and expenses would have been incurred in the normal course of the liquidation. He asserts that the language of these orders and pleadings caused him to believe that he was only required to pay the liquidator's fees "at the point when they are determined to be caused by the contempt and payable."

Based upon our review of the record, we are not persuaded that Castillo's interpretation of the trial court order is accurate. The requirement that Castillo pay all of the liquidator's fees does not constitute the imposition of an excessive fine in violation of La. R.S. 13:4611. The order of dissolution signed by the trial court on July 6, 2017, set forth the obligations of the parties, including cooperating with the reasonable requests of the liquidator. If a party failed to cooperate, the liquidator was to report the noncompliance to the trial court, as she did in this case, regarding both

17

instances of contempt. The trial court was then empowered, by virtue of the dissolution order, to "consider any and all appropriate sanctions and remedies to be imposed against the non-cooperating party." This provision in the dissolution order gave the trial court the authority to order Castillo to pay all the liquidator's fees. In response to Castillo's failure to promptly turn over assets and financial information as required by the dissolution order, he was found in contempt of court for the first time and ordered to pay "all of the costs of the liquidator, when that amount is finally determined." This order did not differentiate between liquidator's fees attributable to the liquidation and those attributable to the contempt. Castillo did not object to the entry of that order in the trial court and he did not appeal the order. Therefore, the court's order that Castillo pay all the liquidator's fees is not before this court for review.

However, Castillo argues that the order did not specify that he had to pay the liquidator's fees as they became due. In the Davidsons' second motion for contempt, they allege that, at the time of the entry of the first judgment of contempt, the trial court imposed upon Castillo a fine of $500 and a jail sentence of ten days, but suspended the jail sentence on the condition of payment of all the liquidator's fees and attorney fees and costs. According to the Davidsons' pleading, at that time, the liquidator's fees were undetermined, but the trial court ordered that they be paid once they were determined. The record shows that, since the entry of that judgment, the liquidator submitted two separate invoices for payment of fees, accompanied by detailed records documenting how the charges were determined. Castillo finally paid the first invoice shortly before the hearing for the second motion for contempt, but had not paid the second invoice in the amount of $13,206.

18

In the second contempt judgment, which is currently before us on this appeal, the trial court ordered Castillo to pay that invoice within five business days from the entry of the judgment and to pay all future invoices of the liquidator within five business days of the receipt of said future invoices.[2] The imposition of this requirement was within the trial court's authority to impose sanctions for noncompliance with reasonable requests of the liquidator conferred in the order of dissolution. Upon the facts presented here, we find no error in the trial court judgment requiring Castillo to pay the liquidator's fees.

## CONCLUSION

For the reasons stated above, we affirm the trial court judgment finding the defendant, Allan Neil Castillo, to be in constructive contempt of court, ordering him to serve ten days in jail, and ordering him to pay the future costs of the liquidator.[3] Costs in this court are assessed to Allan Neil Castillo.

**AFFIRMED.**

---

[2] Castillo erroneously states in his brief that the trial court ordered him to "pay all bills within five business days (not business days after receipt, but five business days generally.)" The order specifically states that future invoices are to be paid within five business days of receipt.

[3] We note that the contempt judgment also ordered Castillo to pay the Davidsons' attorney fees, court costs, and related expenses and to produce certain financial records and documents. That portion of the judgment was not appealed and also remains a viable portion of the trial court judgment.

19